The PEOPLE of the State of
Colorado, Petitioner,

v.

Nathaniel Christopher ISAACKS,
Respondent.

No. 05SC87.

Supreme Court of Colorado,
En Banc.

April 24, 2006.

Rehearing Denied May 15, 2006.*

* Justice COATS would grant the petition; Justice EID does not participate.

John W. Suthers, Attorney General, Cheryl Hone, Assistant Attorney General, Appellate Division, Criminal Justice Section, Denver, for Petitioner.

David S. Kaplan, Colorado State Public Defender, Elizabeth Griffin, Deputy State Public Defender, Denver, for Respondent.

RICE, Justice.

## I. Facts and Procedural History

On December 10, 2002, Respondent, Nathaniel C. Isaacks, was involved in an altercation in his home with his mother, brother, and father. This altercation led Isaacks's father to call the police, who came to the house and arrested Isaacks. According to the Affidavit in Support of Warrantless Arrest, the altercation started when Isaacks began to throw objects across the room. Isaacks's brother started to leave the home, but stayed when he saw Isaacks holding a spoon to his mother's chest and threatening to kill her. When Isaacks's brother approached, Isaacks attacked him and the two began to fight. At one point during the fight, Isaacks held a two-foot log over his head and threatened to kill his brother. Later in the altercation, Isaacks threw a different log across the room at his father. Eventually, Isaacks's brother and father managed to restrain him, and they kept him restrained until the police arrived. The Affidavit further alleged that Isaacks had bitten both his mother and his brother while his family attempted to restrain him.

Isaacks was charged with one count of felony menacing, section 18–3–206(1)(a), (b), C.R.S. (2005), and two counts of third-degree assault, section 18–3–204.[1] Pursuant to an agreement by the parties, the People moved to dismiss these charges in exchange for Isaacks's agreeing to plead guilty to conspiracy to commit felony menacing, section 18–2–201(1), 18–3–206(1)(a), (b). The conspiracy charge was not supported by facts; rather, Isaacks pleaded guilty to this charge to take advantage of the plea bargain. Isaacks, therefore, waived the establishment of a factual basis for his plea. Neither party made sentencing concessions as part of the agreement.

On March 3, 2003, a plea hearing was held at which Isaacks pleaded guilty to the conspiracy charge. The Petition to Enter a Plea of Guilty, which Isaacks signed in the presence of his lawyer, stated that Isaacks had been advised of and understood his constitutional rights, including the right to remain silent and the right to have a jury determine his guilt beyond a reasonable doubt. The Petition also listed the elements of conspiracy to commit felony menacing, and acknowledged that

> [i]f the Court accepts my plea I may be sentenced to the Department of Corrections for a definite term of between 1 year and 18 months .... If the Court finds extraordinary aggravating circumstances ... it may sentence me for a term greater than the presumptive range ... to double the maximum term, making a term as long as 3 years.

Finally, the petition stated that "I expressly waive my right to trial by jury on all issues."

On April 8, 2003, Issacks appeared for the sentencing hearing. The trial judged announced that he had reviewed Isaacks's presentence report and asked the parties if they had any additions or corrections to the report. Isaacks's lawyer replied, "Judge, we do have a couple of additions—I guess—or corrections." He continued, stating that Isaacks disagreed with the assertion in the report that the reason for his being removed from a treatment program was that he had punched a wall. The second objection was that "Mr. Isaacks tells me that the statement in here that he's resistant to treatment is not correct; that he's very interested and motivated to get himself back into treatment and that's something that he wants to do."

Next, the trial judge heard sentencing recommendations from each of the parties. Issacks's counsel urged the court to sentence Isaacks to probation rather than prison. In making this argument, counsel argued that

---

1. Unless otherwise noted, the statutes cited in this opinion have not changed in any relevant way between the date of the commission of the offense and the present date. Therefore, except where otherwise noted, we cite to the 2005 version of the Colorado Code.

prison was inappropriate because of Isaacks's minor criminal history and the fact that he suffered from mental illness. Defense counsel further asserted that Isaacks's brother had struck the first blow in the fight; this contention directly contradicted the Affidavit in Support of Warrantless Arrest, which alleged that Isaacks had started the fight.

The trial judge sentenced Isaacks to three years in the Department of Corrections. This sentence amounted to twice the maximum in the presumptive range for the offense of conspiracy to commit felony menacing.[2] The judge based the aggravated sentence on a number of factors contained in the presentence report. First, the judge noted the seriousness and violent nature of Isaacks's conduct on the day of the incident. The judge also observed that the conviction "involve[d] conduct which ... apparently has been ongoing for a significant period of time." Further, the judge noted that Isaacks had seen nine therapists and tried seven medications, and concluded that "it's a little difficult for me to say, well, let's try a tenth therapist and an eighth medication without a specific recommendation from somebody ...." Finally, the judge considered the fact that Isaacks's history included the abuse of six illegal drugs.

*Blakely* was decided while Isaacks's case was on direct appeal. In supplemental briefing in response to *Blakely*, Isaacks argued that "the trial court violated *Blakely v. Washington* by imposing a sentence in the aggravated range longer than that authorized by his guilty plea alone." *People v. Isaacks*, No. 03CA0967, slip op. at 3, 2004 WL 2749072 (Colo.App. December 2, 2004) (citation omitted). The court of appeals agreed, vacated Isaacks's sentence, and remanded to the district court for resentencing. *Id.* at 3, 8. The People petitioned for certiorari, and we affirm.

## II. Analysis

In *Lopez v. People*, 113 P.3d 713 (Colo. 2005), we applied the holding of *Blakely v.*

*Washington*, 542 U.S. 296, 124 S.Ct. 2531, 159 L.Ed.2d 403 (2004), to Colorado's statutory sentencing scheme and concluded that aggravated sentencing under section 18–1.3–401(6), C.R.S. (2005), is constitutionally permissible when it is based on "facts admitted by the defendant." *Lopez*, 113 P.3d at 716. *See Blakely*, 542 U.S. at 303, 124 S.Ct. 2531. The issue on which we granted certiorari in the instant case is "[w]hether a defendant's failure to make corrections or additions to his presentence report when asked by the court constitutes an admission of information not related to the elements of the crime [that] permits an aggravated sentence under *Blakely v. Washington* and *Lopez v. People*."

■ We conclude that a sentencing court may not use a defendant's admissions to sentence him in the aggravated range unless the defendant knowingly, voluntarily and intelligently waives his Sixth Amendment right to have a jury find the facts that support the aggravated sentence. Applying this rule to the instant case, we hold that a defendant's failure to object to facts in a presentence report does not constitute an admission for purposes of *Blakely* and *Lopez* unless the defendant makes a constitutionally sufficient waiver of his right to a jury trial on the facts contained in the report. Because Isaacks did not waive his *Blakely* rights with respect to the facts in the presentence report that the court used to aggravate his sentence, the sentence must be vacated.

This opinion proceeds as follows. First, we explain the scope of the *Blakely* jury-trial right by identifying the facts to which it applies. Second, we set forth the procedures that must accompany a sentencing court's use of the defendant's factual admissions for sentencing in the aggravated range. Third, we apply our conclusions to the facts of Isaacks's case. Finally, we set forth the appropriate relief for a sentence that violates the dictates of *Blakely*.

### A. To Which Facts Does the *Blakely* Jury–Trial Right Apply?

■ *Blakely v. Washington* holds that criminal defendants have the right to a jury

---

**2.** The court relied on section 18–1–105(6), C.R.S. (2002), the predecessor to section 18–1.3–401(6), which authorizes trial judges to increase sentences beyond the presumptive range based on

"aggravating circumstances." For ease of reference, throughout this opinion, we cite to the 2005 version of section 18–1.3–401(6).

trial on "all the facts which the law makes essential to the punishment." 542 U.S. 296, 304, 124 S.Ct. 2531, 159 L.Ed.2d 403 (2004) (internal quotation marks omitted). To understand this holding and its consequences for sentencing in Colorado, it is necessary to review the facts of *Blakely*, as well as *Apprendi v. New Jersey*, 530 U.S. 466, 120 S.Ct. 2348, 147 L.Ed.2d 435 (2000), *Blakely*'s immediate predecessor.

In *Apprendi*, the Court considered the sentence of a New Jersey man who pleaded guilty to two counts of possession of a firearm for an unlawful purpose after he fired several bullets into the home of an African–American family that had recently moved into a previously all-white neighborhood. 530 U.S. at 469–70, 120 S.Ct. 2348. New Jersey law authorized a punishment of "between five years and 10 years" for the offense of possession of a firearm for an illegal purpose. *Id.* at 468, 120 S.Ct. 2348. On one of the counts, the trial court sentenced the defendant to twelve years' imprisonment, relying on a "hate crime" law that provided for "extended" sentences upon a finding by the trial judge by a preponderance of the evidence that "[t]he defendant in committing the crime acted with a purpose to intimidate an individual or group of individuals because of race, color, gender, handicap, religion, sexual orientation or ethnicity." *Id.* at 468–69, 471, 120 S.Ct. 2348.

The *Apprendi* Court struck down the increased sentence, holding that "[o]ther than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt." 530 U.S. at 490, 120 S.Ct. 2348. The Court explained the reason for its holding as follows:

> 'The law threatens certain pains if you do certain things ....' New Jersey threatened Apprendi with certain pains if he unlawfully possessed a weapon and with additional pains if he selected his victims with a purpose to intimidate them because

of their race. As a matter of simple justice, it seems obvious that the procedural safeguards designed to protect Apprendi from unwarranted pains should apply equally to the two acts that New Jersey has singled out for punishment.

*Id.* at 476, 120 S.Ct. 2348 (quoting O. Holmes, *The Common Law* 40 (M. Howe ed.1963)).

Four years later, in *Blakely*, the Court applied the *Apprendi* rule to the State of Washington's statutory sentencing scheme, which provided a sentencing ceiling for each of several classes of felonies and further specified a "standard range" of sentences for particular offenses within each class. 542 U.S. 296, 299, 124 S.Ct. 2531, 159 L.Ed.2d 403 (2004). The defendant pleaded guilty to second-degree kidnaping with a firearm, a "class B" felony. The sentencing ceiling for class B felonies under Washington law was ten years' imprisonment, and the standard range for second-degree kidnaping was 49–53 months' imprisonment. *Id.* at 303, 124 S.Ct. 2531.

Following the defendant's plea, the trial court sentenced him to 90 months' imprisonment, which was below the sentencing ceiling for class B felonies, but above the "standard range" for second-degree kidnaping with a firearm. *Blakely*, 542 U.S. at 303, 124 S.Ct. 2531. The court imposed this sentence based on its finding that Blakely acted with "deliberate cruelty" in committing the offense. *Id.* The Supreme Court struck down this sentence, holding that the maximum sentence a judge may impose is not the sentence he "may impose after finding additional facts, but the maximum he may impose *without* any additional findings." *Id.* at 303–04, 124 S.Ct. 2531 (emphasis in original).

*Apprendi* and *Blakely* provide a clear answer to the question of what facts are covered by the jury-trial right: The *Blakely* right extends to all facts that are not reflected in a jury verdict or, in the case of a plea bargain, to all facts beyond those that establish the elements of the charged offense.[3] As was the case for the defendant in

---

3. We note that *Apprendi* and *Blakely* do not render it "impermissible for judges to exercise discretion—taking into consideration various factors relating both to offense and offender—in

imposing a judgment *within the range* prescribed by statute." *Apprendi*, 530 U.S. at 481, 120 S.Ct. 2348 (emphasis in original). *See also People v. Pate*, 878 P.2d 685, 694 (Colo.1994) ("It is axio-

*Apprendi*, "it is a matter of simple justice" that criminal defendants in Colorado should receive the same procedural protections from "unwarranted pains" without regard to whether those "pains" are authorized by the definition of an offense or by the presence of "aggravating circumstances" under section 18–1.3–401(6). This is the constitutional interest protected by *Blakely's* holding that the jury-trial right extends to "all the facts which the law makes essential to the punishment," *Blakely*, 542 U.S. at 304, 124 S.Ct. 2531 (internal quotation marks omitted), and by *Lopez's* application of *Blakely* to Colorado's sentencing scheme. *See Lopez*, 113 P.3d at 727 (concluding that the aggravated-circumstances analysis authorized by section 18–1.3–401(6) "may involve additional fact-finding by the trial judge," and that "[i]f it does, the rule of *Blakely* applies").

We note that this conclusion is consistent with the holdings of several other courts that have considered the issue. *See State v. Brown*, 212 Ariz. 225, 129 P.3d 947, 953 (2006) ("[W]e hold that the Sixth Amendment right to jury trial with respect to an aggravating factor necessary to impose a sentence remains inviolate unless the defendant's plea of guilty necessarily establishes the aggravating factor . . . ."); *State v. Curtis*, 126 Wash. App. 459, 108 P.3d 1233, 1236 (Div. 2, 2005) (concluding that "the State was obligated to prove to a jury beyond a reasonable doubt the exceptional sentence facts"); *State v. Hagen*, 690 N.W.2d 155, 158–59 (Minn.Ct.App. 2004) (recognizing "the defendant's constitutional right to a jury trial on the sentencing issue[s]").

**B. What Procedure Is Required Before a Sentencing Court May Use a Defendant's Factual Admissions for Sentencing in the Aggravated Range?**

Having determined that *Blakely* provides defendants the right to jury trial on all facts that are not included in a jury verdict or essential to a guilty plea, we turn to the procedures necessary to protect this right. Specifically, we must determine what proce-

dural protections are required in order for a sentencing court to use a defendant's factual admissions for purposes of aggravated sentencing. We are guided in this analysis by the Court's conclusions in *Apprendi* and by several familiar principles of Sixth Amendment law.

■ The *Apprendi* Court observed that the Fourteenth and Sixth Amendments "indisputably entitle a criminal defendant to 'a jury determination that [he] is guilty of *every element* of the crime with which he is charged, beyond a reasonable doubt.'" *Apprendi*, 530 U.S. at 477, 120 S.Ct. 2348 (emphasis added) (citations omitted). Later in the opinion, the Court concluded that "when the term 'sentence enhancement' is used to describe an increase beyond the maximum authorized statutory sentence, it is the functional equivalent of an element of a greater offense than the one covered by the jury's guilty verdict." *Id.* at 494 n. 19, 120 S.Ct. 2348. *See also Lopez*, 113 P.3d at 722 ("On the distinction between sentencing factors and elements of crimes, the Court [in *Blakely* ] impliedly rejected any remaining difference for the purposes of the jury trial requirement.").

■ From these statements in *Apprendi* it is not difficult to extrapolate the rule that, like the right to jury trial generally, the right to have a jury determine the facts that form the basis for aggravated sentencing under section 18–1.3–401(6) is a fundamental right that can only be waived knowingly, voluntarily and intelligently. *See Boykin v. Alabama*, 395 U.S. 238, 242, 89 S.Ct. 1709, 23 L.Ed.2d 274 (1969) (holding that guilty pleas must be accompanied by a knowing, voluntary, and intelligent waiver); *People v. Norman*, 703 P.2d 1261, 1271 (Colo.1985) (holding that waiver of the right to jury trial must be accompanied by a knowing, voluntary, and intentional waiver). The trial court may not, therefore, use "[f]acts admitted by the defendant," *Lopez*, 113 P.3d at 716, to aggravate a defendant's sentence unless the defendant knowingly, voluntarily, and intelligently

matic that the judiciary has the exclusive power to impose sentences which fall within the limits

determined by the General Assembly.").

waives his jury-trial rights with respect to those facts.

We are aware that certain language in *Apprendi* and *Blakely* could be read to permit trial courts to use a defendant's factual admissions to increase his sentence in the absence of a *Blakely* waiver. *See Apprendi,* 530 U.S. at 490, 120 S.Ct. 2348 ("Other than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury ...."); *and Blakely,* 542 U.S. at 303, 124 S.Ct. 2531 (defining "the 'statutory maximum' for *Apprendi* purposes [as] the maximum sentence a judge may impose *solely on the basis of the facts reflected in the jury verdict or admitted by the defendant.*" (emphasis in original)). We are also aware that several federal circuits have upheld sentencing enhancements under the federal sentencing guidelines based on facts admitted by the defendant when the defendant had not executed a constitutionally sufficient waiver of the right to jury trial on those facts. *See, e.g., United States v. Bartram,* 407 F.3d 307, 314–15 (4th Cir.2005) (rejecting defendant's *Blakely–Booker* challenge to sentence enhancement "[b]ecause there was no Sixth Amendment violation in this case, all facts being admitted under the guilty plea or expressly in open court"); *United States v. Murdock,* 398 F.3d 491, 501 (6th Cir.2005) (where defendant admitted to facts used in determining sentence in plea agreement and plea colloquy, concluding "that there was no Sixth Amendment violation in this case ... because the district court's determination of the amount of loss was supported by facts admitted by the defendant"); *United States v. Shelton,* 400 F.3d 1325, 1328–30 (11th Cir. 2005) (finding no constitutional error under *Blakely* and *Booker* where defendant admitted, in part during plea colloquy and in part during sentencing hearing, to facts supporting increase in offense level due to drug-quantity).

We are persuaded, however, that *Blakely* does not permit sentencing courts to use "facts ... admitted by the defendant," *Blakely,* 542 U.S. at 303, 124 S.Ct. 2531, in the absence of a waiver of rights by the defendant. This is so for several reasons.

First, *Apprendi*'s reference to the *"prescribed* statutory maximum," 530 U.S. at 490, 120 S.Ct. 2348 (emphasis added), suggests that the statutory maximum is the punishment fixed by law for a particular offense, and that all other facts bearing on punishment (except for prior-conviction facts) are covered by the *Blakely* jury-trial right. Second, requiring a waiver before "facts ... admitted by the defendant" may be used to increase the defendant's sentence furthers the central goal of *Blakely,* which was to correct a system "in which a defendant, with no warning in either his indictment or plea, would routinely see his maximum sentence balloon from as little as five years to as much as life imprisonment ...." *Blakely,* 542 U.S. at 311, 124 S.Ct. 2531.

Finally, express language in *Blakely* appears to require a constitutionally sufficient waiver before the sentencing court can consider any fact beyond the facts that establish the elements of the offense for a plea bargain. In explaining its holding, the majority responded to Justice Breyer's argument that the *Blakely* rule would "work to the detriment of criminal defendants who plead guilty by depriving them of the opportunity to argue sentencing factors to a judge." *Blakely,* 542 U.S. at 310, 124 S.Ct. 2531. The majority's response was that

> nothing prevents a defendant from waiving his *Apprendi* rights. When a defendant pleads guilty, the State is free to seek judicial sentence enhancements so long as the defendant either stipulates to the relevant facts or consents to judicial factfinding. If appropriate waivers are procured, States may continue to offer judicial factfinding as a matter of course to all defendants who plead guilty.

*Id.* at 310, 124 S.Ct. 2531 (internal citations omitted). In light of the Sixth Amendment principles discussed above, this language compels the conclusion that *Blakely* does not permit a sentencing court to use a defendant's factual admissions to increase his sentence unless the defendant first effectuates a knowing, voluntary, and intelligent waiver of his *Blakely* rights.

## C. Application to This Case

■ There is no evidence in the record that Isaacks knowingly, voluntarily, and intelligently waived his right to have a jury determine the facts in the presentence report that the trial court used to sentence him in the aggravated range. Indeed, Isaacks was sentenced a full year before the Supreme Court handed down *Blakely*, so he could not possibly have knowingly, voluntarily, and intelligently waived his *Blakely* rights. *See People v. Curtis*, 681 P.2d 504, 514 (Colo. 1984) ("A waiver is an intentional relinquishment of a *known* right or privilege."); *Rice v. People*, 193 Colo. 270, 271, 565 P.2d 940, 941 (1977) ("Rules prescribing the manner in which the right to trial by jury may be waived are to be strictly interpreted in order to preserve this fundamental right."); *Boykin v. Alabama*, 395 U.S. 238, 242, 89 S.Ct. 1709, 23 L.Ed.2d 274 (1969) ("We cannot presume a waiver of [the right to jury trial] from a silent record."). Therefore, Isaacks's aggravated-range sentence violated his *Blakely* rights, and it must be struck down.

## D. Remedy

■ The proper procedure for an appellate court to follow upon finding *Blakely* error is to remand the case to the trial court for resentencing within the presumptive range. *See, e.g. State v. Hughes*, 154 Wash.2d 118, 110 P.3d 192, 211 (2005) (remanding with directions to impose sentence within standard range).

The People suggest that the proper remedy "is to allow the prosecution to withdraw its consent to the plea agreement." We disagree. In *Keller v. People*, 29 P.3d 290 (2000), we observed that "we have recognized only two bases for allowing the prosecution to withdraw from an accepted plea agreement: (1) where the parties have entered into a plea agreement that provides for an illegal sentence; and (2) where the defendant has materially and substantially breached the plea agreement by her action or inaction." *Id.* at 296 (internal citations omitted).

Neither of *Keller*'s two circumstances is present in the instant case. First, the parties have not "entered into a plea agreement that provides for an illegal sentence." In fact, neither party made any sentencing concessions as part of the plea agreement. Second, Isaacks has not breached the plea agreement in any way. He upheld his end of the plea bargain when he pleaded guilty to the conspiracy charge. We therefore find no basis for allowing the government to withdraw from the plea agreement.

## III. Conclusion

For the foregoing reasons, we affirm the decision of the court of appeals vacating Isaacks's sentence and remand to the trial court for resentencing within the presumptive range.

COATS, J., dissents.

EID, J., does not participate.

Justice COATS, dissenting.

While I agree that a defendant must voluntarily and intelligently waive his right to have a jury find any fact that increases his sentence beyond the statutory maximum, other than a prior conviction, I strongly disagree with the majority's apparent understanding of what such a waiver entails. The record in this case is literally awash with evidence that the defendant calculatedly bargained for this precise plea, fully understanding and agreeing to this precise sentencing range, in order to avoid the risk of more serious consequences; and now, with deal in hand, he continues to haggle with the Court in hopes of gaining some additional advantage. Although the actual difference in sentences at issue here is relatively small, the majority applies a standard for waiver so exacting as to be out of reach for any pre-*Blakely* sentence. Because I believe the standard suggested by the majority is not only without legal support, but will also impact a substantial number of sentences, I respectfully dissent.

After reasoning that a voluntary, knowing, and intelligent waiver of jury sentencing is required, the majority summarily concludes that no evidence in the record supports an effective waiver by the defendant, and in fact, that a defendant sentenced before the United Supreme Court's holding in *Blakely v. Wash-*

*ington,* 542 U.S. 296, 124 S.Ct. 2531, 159 L.Ed.2d 403 (2004), could not possibly make an intelligent waiver of his constitutional right to jury sentencing. *See* maj. op. at 1196. The constitutional right to a jury determination of any sentence enhancement factor (and therefore the requirement for an effective waiver of that right), however, derives from the fact that a sentence enhancement factor "is the functional equivalent of an element of a greater offense than the one covered by the jury's guilty verdict." Maj. op. at 1194 (*quoting Apprendi v. New Jersey,* 530 U.S. 466, 494 n. 19, 120 S.Ct. 2348, 147 L.Ed.2d 435 (2000)). The law governing the entry of guilty pleas, and the concomitant waiver of the right to a jury trial, is not nearly so demanding with regard to the defendant's knowledge of the precise elements of the offense to which he pleads.

The United States Supreme Court has long held that an effective plea does not require that a ritualistic litany of the formal legal elements of an offense be read to the defendant. *Henderson v. Morgan,* 426 U.S. 637, 644, 96 S.Ct. 2253, 49 L.Ed.2d 108 (1976); *see also Marshall v. Lonberger,* 459 U.S. 422, 436–37, 103 S.Ct. 843, 74 L.Ed.2d 646 (1983). It is enough that the defendant was given real notice of the true nature, or substance, of the charge against him, as opposed to its technical elements. *Henderson,* 426 U.S. at 645, 96 S.Ct. 2253. And that determination must be made in the totality of the circumstances, including not only the entire record but also the presumption that defense counsel explained to the defendant the nature of the charge. *Id.* at 647, 96 S.Ct. 2253; *see also People v. Drake,* 785 P.2d 1257, 1268 (Colo.1990).

As the majority notes, the record in this case included not only a providency hearing but also a written plea petition, signed by the defendant in the presence of his counsel. The plea was entered pursuant to an agreement presented to the court. In exchange for pleading guilty to an added, lesser, class 6 felony, the defendant benefited by the dismissal of all pending charges, including a class 5 felony, with a potential six-year sentence, and two class 1 misdemeanors, with potential two-year sentences. In order to make possible a mutually acceptable plea, the defendant waived a factual basis for the added offense, contrived for purposes of the plea. He therefore clearly was on notice of the critical elements of that charge.

The record indicates that the defendant was advised that by entering his plea he was giving up his right to a jury trial. He was advised of the elements of the offense and the possible penalties. Not only did the defendant, with the advice of counsel, expressly waive his right to a jury trial, but in his written petition, he expressly indicated his understanding and agreement that the court could sentence him to a term as long as 3 years, if it found extraordinary aggravating circumstances. While the defendant may have hoped for a lesser sentence, he clearly found it advantageous to accept conviction of a class 6 felony and a sentence as great as 3 years, in exchange for the dismissal of all of his other charges.

Although it offers no real explanation or support, the majority implicitly holds that admissions by the defendant of extraordinary aggravating facts or his accession to judicial fact-finding in sentencing could not be effective unless he knew of the jury trial right articulated in *Blakely,* and he understood the full extent of the right he was waiving. As already noted, an understanding of such technical distinctions between the responsibilities of the jury and those of the court has never been required for an effective guilty plea. But with regard to future developments in the law in particular, the Supreme Court has warned against reallocation of the risks bargained for by the parties, solely because of their failure to anticipate those changes. *Brady v. United States,* 397 U.S. 742, 757, 90 S.Ct. 1463, 25 L.Ed.2d 747 (1970) ("[A]bsent misrepresentation or other impermissible conduct ... a voluntary plea of guilty intelligently made in light of the then applicable law does not become vulnerable because later judicial decisions indicate that the plea rested on a faulty premise."); *see also United States v. Bradley,* 400 F.3d 459, 464–65 (6th Cir.2005) (relying on *Brady*'s rationale to reject defendant's challenge to his waiver of appellate rights, contained in a guilty plea, in light of *United States v. Book-*

*er*, 543 U.S. 220, 125 S.Ct. 738, 160 L.Ed.2d 621 (2005)); *United States v. Leach*, 417 F.3d 1099, 1104 (10th Cir.2005) (holding that *Blakely* and *Booker* should not "negate waivers of other constitutional rights, such as the right to a trial by jury," in reliance on *Bradley* ); *cf. United States v. Sahlin*, 399 F.3d 27, 31 (1st. Cir.2005) (relying on *Brady* rationale to uphold defendant's agreement for sentencing under the mandatory guideline scheme, despite subsequent excision of mandatory provision in *Booker* ).

With regard to a failure to disclose potential impeachment evidence, the Supreme Court has noted that the Constitution "does not require complete knowledge of the relevant circumstances, but permits a court to accept a guilty plea, with its accompanying waiver of various constitutional rights, despite various forms of misapprehension under which a defendant might labor." *United States v. Ruiz*, 536 U.S. 622, 630, 122 S.Ct. 2450, 153 L.Ed.2d 586 (2002) (noting that *Brady* recognized that a defendant's failure to anticipate a change in the law regarding relevant punishments is one such misapprehension). The Court had previously characterized the plea in *Brady* as intelligent, despite later judicial decisions indicating that at the time of his plea, the defendant did not correctly assess every relevant factor entering into his decision, because "he was advised by competent counsel, was in control of his mental faculties, and was made aware of the nature of the charge against him." *Bousley v. United States*, 523 U.S. 614, 619, 118 S.Ct. 1604, 140 L.Ed.2d 828 (1998).

Even though Isaacks may not have been able to anticipate that the law would soon entitle him to a jury determination of the easily established (and apparently undisputed) facts relied on by the sentencing court, such as the extent of his erratic behavior, the number of therapists he had seen and medications they had prescribed without success, and his history of drug abuse, that fact was inconsequential to his decision. There can be no doubt that he understood the charge to which he pled guilty and the penalty to which he was subjecting himself, and he voluntarily and intelligently bargained for those consequences because he considered them to his advantage. He clearly got the benefit of his bargain.

Because I believe the majority misapprehends the requirements of an intelligent guilty plea in this context and misapplies them to the record in this case, I respectfully dissent.