25CA0135 Peo v Hatch 02-12-2026

COLORADO COURT OF APPEALS

Court of Appeals No. 25CA0135
Boulder County District Court No. 23CR1781
Honorable Andrew Hartman, Judge
Honorable Nancy W. Salomone, Judge

The People of the State of Colorado,

Plaintiff-Appellee,

v.

Jeffrey Royce Hatch,

Defendant-Appellant.

ORDER AFFIRMED

Division IV
Opinion by JUDGE BROWN
Freyre and Schutz, JJ., concur

**NOT PUBLISHED PURSUANT TO C.A.R. 35(e)**
Announced February 12, 2026

Philip J. Weiser, Attorney General, William G. Kozeliski, Senior Assistant
Attorney General, Denver, Colorado, for Plaintiff-Appellee

Flesch Law, Kevin C. Flesch, Englewood, Colorado, for Defendant-Appellant

¶ 1    Defendant, Jeffrey Royce Hatch, appeals the district court's denial of his Crim. P. 32(d) motion to withdraw his guilty plea. We affirm.

## I.    Background

¶ 2    The prosecution charged Hatch with internet luring of a child, criminal attempt to commit obscenity, and unlawful possession of a controlled substance. The charges stemmed from allegations that Hatch, among other things, sent messages containing sexually explicit content to an individual he believed to be under fifteen years old.

¶ 3    Following negotiations with the prosecution, during which Hatch was represented by counsel, Hatch agreed to plead guilty to an added count of attempted sexual assault on a child (SAOC) in exchange for dismissal of the remaining counts. At the providency hearing, the district court accepted Hatch's guilty plea, finding that he entered it voluntarily, knowingly, and intelligently.

¶ 4    Before sentencing, Hatch retained new counsel and moved to withdraw his guilty plea, arguing that he had not been adequately advised of the possible consequences of pleading guilty to attempted SAOC. The court denied the motion, concluding that it contained

1

"only bare and conclusory statements" and did not allege facts that, if true, would entitle him to withdraw his plea. Hatch then filed a renewed and slightly more detailed motion, this time alleging both that he had been inadequately advised by the court and that his plea counsel had been ineffective. The court denied the renewed motion, concluding that Hatch "still relie[d] on conclusory statements" that "cannot establish the necessary showing to warrant withdrawal of [his] plea."

¶ 5 Approximately three months later, the district court sentenced Hatch to two years in the custody of the Department of Corrections (DOC) followed by two years of mandatory parole.

## II. Crim. P. 32(d) Governs Hatch's Motion

¶ 6 Hatch moved to withdraw his plea under both Crim. P. 32(d) and Crim. P. 35(c). But Crim P. 35(c) allows for *postconviction* review of alleged constitutional errors. *See Kazadi v. People*, 2012 CO 73, ¶ 16 (Crim. P. 35(c) allows a defendant to challenge a judgment of conviction). When Hatch moved to withdraw his plea, the district court had not imposed a sentence or entered a judgment of conviction. *See* Crim. P. 32(b)(3) (defining a judgment of conviction as including the sentence). Consequently, relief under

2

Crim. P. 35(c) was unavailable. *See Kazadi*, ¶ 18 (Crim. P. 35(c) requires the court to have sentenced the defendant and entered a judgment of conviction before a defendant can challenge the conviction). Instead, Crim. P. 32(d) governs Hatch's motion to withdraw his guilty plea.

### III. Motion to Withdraw Guilty Plea

¶ 7 Hatch contends that the district court erred by denying his motion to withdraw his guilty plea under Crim. P. 32(d) because he (1) was inadequately advised under Crim. P. 11 and (2) received ineffective assistance of counsel. We disagree.

### A. Crim. P. 32(d)

¶ 8 A defendant does not have an absolute right to withdraw a guilty plea under Crim. P. 32(d). *Kazadi*, ¶ 14. Instead, the defendant bears the burden of establishing a "fair and just reason" for the withdrawal, *id.* (citation omitted), and showing that "justice will be subverted by denying the motion," *id. See Crumb v. People*, 230 P.3d 726, 730 (Colo. 2010) (the court should consider a nonexclusive list of factors, including whether the prosecution would be prejudiced by the withdrawal of the guilty plea, whether the defendant promptly moved to withdraw the guilty plea, and

3

whether the defendant has shown that justice will be subverted if the motion is denied). As relevant here, a defendant may make the requisite showing by demonstrating that he entered the plea by mistake or under a misconception of the nature of the charge, his plea was involuntary, or he received ineffective assistance of counsel. *Kazadi*, ¶ 14; *see Crumb*, 230 P.3d at 730 ("A defendant can show that justice will be subverted where, among other reasons, 'a plea was entered through fear, fraud, or official misrepresentation or where it was made involuntarily for some reason.'" (citation omitted)).

¶ 9 The trial court has discretion to determine whether a defendant has demonstrated a fair and just reason to withdraw a plea, and we will not reverse its decision absent an abuse of that discretion. *Crumb*, 230 P.3d at 730. A court abuses its discretion when its ruling is manifestly arbitrary, unreasonable, or unfair, or when it misapplies the law. *People v. Williams*, 2019 COA 32, ¶ 21.

### B. Crim. P. 11

¶ 10 Hatch contends that the district court abused its discretion by denying his Crim. P. 32(d) motion because he received an

inadequate Crim. P. 11 advisement, rendering his plea invalid. We are not persuaded.

### 1.     Standard of Review and Applicable Law

¶ 11     Because a guilty plea involves a waiver of important constitutional rights, it is valid "only if done voluntarily, knowingly, and intelligently, 'with sufficient awareness of the relevant circumstances and likely consequences.'" *Medina v. People*, 2023 CO 46, ¶ 17 (quoting *Bradshaw v. Stumpf*, 545 U.S. 175, 183 (2005)).  A plea is invalid when the defendant lacks a complete "understanding of the charge [such] that his plea cannot stand as an intelligent admission of guilt." *Id.* (citation omitted).  We review the constitutional validity of a guilty plea de novo but defer to the court's factual findings if they are supported by the record.  *Id.* at ¶ 15.

¶ 12     To protect a defendant's constitutional rights, Crim. P. 11(b) requires that the trial court make certain determinations before accepting a guilty plea.  *Medina*, ¶ 19.  The rule provides that the court "shall not accept" a guilty plea without determining that the defendant has been advised of the rights in Crim. P. 5(a)(2), including "the nature of the charge."  Crim. P. 11(b).  The court

must also determine, as relevant here, that (1) "the defendant understands the nature of the charge and the elements of the offense to which he is pleading and the effect of his plea"; (2) "the plea is voluntary on [the] defendant's part and is not the result of undue influence or coercion on the part of anyone"; (3) the defendant "understands the possible penalty or penalties"; and (4) "there is a factual basis for the plea," unless the defendant waives "the establishment of a factual basis for the particular charge to which he pleads." Crim. P. 11(b)(1)-(2), (4), (6). The court's compliance with Crim. P. 11 ordinarily satisfies due process. *Medina*, ¶ 19.

¶ 13    To determine whether a defendant received a sufficient Crim. P. 11 advisement, "we look to whether the record as a whole shows that [the] defendant received sufficient information as to be fairly placed on notice of the matter in question." *Young v. People*, 30 P.3d 202, 205-06 (Colo. 2001). There is no "formalistic litany" required before a court may accept a defendant's guilty plea. *Medina*, ¶ 18 (citation omitted). And when evaluating the validity of a plea, we consider "not only the statements made during a providency hearing but also those statements made by both

6

defendant and his attorney in a petition to plead guilty." *People v. Weed*, 830 P.2d 1095, 1098 (Colo. App. 1991).

### 2. Hatch's Allegations Do Not Establish an Inadequate Advisement Under Crim. P. 11

¶ 14 Hatch argues that the district court's Crim. P. 11 advisement was insufficient because the court failed to (1) verify whether the plea was voluntary; (2) advise Hatch as to the nature or elements of the offense to which he pleaded guilty; and (3) ensure Hatch understood the penalties and probationary requirements associated with his plea. Viewing the record as a whole, we conclude that Hatch "entered his guilty plea voluntarily and understandingly." *Medina*, ¶ 18 (citation omitted). As a result, we perceive no abuse of discretion by the district court in denying his Crim. P. 32(d) motion on this basis. *See Crumb*, 230 P.3d at 730.

¶ 15 Before the providency hearing, the parties submitted a physical copy of the plea agreement to the court for its consideration. Section I of the plea agreement provided that Hatch would plead guilty to the charge of "CRIMINAL ATTEMPT TO COMMIT SEXUAL ASSAULT ON A CHILD" and cited sections 18-3-405(1) and 18-2-101, C.R.S. 2025. Section I also set forth

7

"specific additional agreements," including that Hatch could have "[n]o contact with anyone under 18" and must "[c]omply with registration as required by statute."

¶ 16    In section II of the plea agreement, Hatch declared, among other things, that (1) he "underst[ood] the nature of the charge(s) against [him]"; (2) he had read and understood the elements of the offense, the culpable mental state, and the associated penalties; (3) "[i]f the plea is a result of a plea agreement, [he] waive[d] the establishment of a factual basis for the charge, as [he was] pleading guilty to take advantage of the plea agreement"; (4) he understood "that if [he was] convicted of a sex offense, or a crime involving a sexual basis, [he was] agreeing to abide by all terms and conditions of sex offender intensive supervised probation (SOISP) as a condition of [his] plea agreement"; and (5) he read and thoroughly understood the SOISP conditions, which were "attached and incorporated" into the plea agreement, evidenced by a separate signature beneath that declaration.  Hatch also signed and dated the document at its end, acknowledging that he "read and thoroughly underst[ood] the plea agreement."

¶ 17    At the providency hearing, the district court explained that it was required to ask Hatch "a set of questions" to ensure that his guilty plea would be knowing, voluntary, and intelligent. The court first asked Hatch about his age, education, and ability to understand English. The court also asked if Hatch understood the plea agreement documents, and he responded, "Yes." The court then inquired whether it was Hatch's "free and voluntary decision to enter into" the plea. Hatch initially responded that he felt like he was being "coerced and forced into taking" the plea. But the court asked Hatch additional questions to clarify that no one was forcing him to enter a plea. When asked by the court, Hatch confirmed that "the situation stinks" and that he did not have good options. Although he said he felt like taking the plea agreement was "the only option [he had]," he also admitted that "[i]t is a good option, so I'm taking this plea deal."

¶ 18    The court then asked a series of questions concerning the substance of Hatch's plea agreement and the charge to which he was pleading. The court asked Hatch if he spent "the better part of the morning" reading through the plea paperwork with defense counsel, and Hatch responded affirmatively. The court then

explained that Hatch was pleading guilty to "an attempt to commit what I'm going to call for our court discussion SAOC." The court asked Hatch if he understood what it meant when it said "SAOC," and Hatch answered, "Yes, Your Honor, I do." He confirmed that defense counsel had explained "that abbreviation" to him and why the court was using an abbreviation to describe the charge. He also agreed that he understood what the charge "mean[t] legally and how it applie[d] to" his case.

¶ 19 The court then addressed the possible penalties. It explained that the SAOC charge was a class 5 felony, "which means that it does carry the possibility of prison time . . . between one year and three years, unless there [are] extraordinary circumstances." The court also explained that, following any sentence to the DOC, "there would always be a two[-]year period of parole that would follow [Hatch's] release." The court asked Hatch if he understood the potential penalties, and Hatch responded, "Yes, Your Honor, I do." The court then asked Hatch if he understood and discussed with defense counsel "that there are certain additional consequences to your plea that require your registration, et cetera." Hatch again responded affirmatively. The court asked defense counsel if there

was a stipulation or waiver as to the factual basis of the charge, and counsel responded, "We would waive, Your Honor."

¶ 20 The court concluded by asking Hatch, "[H]ow do you wish to plead to the SAOC count?" Hatch answered, "Guilty." The court accepted Hatch's guilty plea, finding it "knowing and voluntary and intelligently entered."

¶ 21 Considering the written plea paperwork and the providency hearing colloquy, we conclude that the district court adequately advised Hatch under Crim. P. 11 and that the record as a whole demonstrates that Hatch's plea was knowing, voluntary, and intelligent. *See Medina*, ¶ 17; *Young*, 30 P.3d at 205-06.

¶ 22 We are not persuaded otherwise by Hatch's contention that the court failed to verify that his plea was voluntary. Hatch points to his comment that he felt "coerced and forced" into entering the guilty plea. But the record contradicts this claim. After Hatch expressed this concern, the court said it wanted to "make super clear" this was not a situation in which Hatch did not want to enter a plea and someone was making him do it. Hatch repeatedly clarified that he was not being coerced. Although he felt he had no "good options," he explained that entering a guilty plea on the

proposed charge was "the only option [he had]" and that it was "a good option." Thus, the record supports the court's finding that Hatch entered his guilty plea voluntarily. *See Medina,* ¶ 15.

¶ 23 We are similarly unconvinced by Hatch's contention that the court failed to advise him as to the nature or elements of the offense to which he pleaded guilty. Hatch argues that he was never informed what the abbreviation "SAOC" meant. But his argument is refuted by the record. The plea paperwork Hatch signed clearly identified the crime to which he was pleading guilty as "CRIMINAL ATTEMPT TO COMMIT SEXUAL ASSAULT ON A CHILD" and cited the relevant statutory provisions. With the plea paperwork in hand, the court asked Hatch if he understood what it meant when it said "SAOC." Hatch said he knew what the abbreviation meant and had discussed it with defense counsel. Thus, Hatch was adequately advised as to what SAOC meant.

¶ 24 Hatch also argues that he was never advised as to the elements of attempted SAOC. This presents a closer call given that the plea agreement did not list the elements and the district court did not say them aloud. But Hatch confirmed he understood what the SAOC charge meant "legally and how it applie[d] to what

12

happened" in his case. And defense counsel waived the establishment of a factual basis for the offense of SAOC, which was consistent with Hatch's own declaration in the plea agreement that "[he] waive[d] the establishment of a factual basis for the charge, as [he was] pleading guilty to take advantage of the plea agreement." *See* Crim. P. 11(b)(6); *see also Medina*, ¶ 37 ("Crim. P. 11(b)(6) expressly allows defendants to waive proof of a factual basis if their plea is entered as the result of a plea agreement."); *People v. Isaacks*, 133 P.3d 1190, 1191 (Colo. 2006) (a defendant was charged with menacing but pleaded guilty to a conspiracy charge that "was not supported by facts" so he could take advantage of a plea bargain). Accordingly, the record supports the court's conclusion that Hatch knowingly and intelligently pleaded guilty with a sufficient understanding of the nature and elements of the offense. *See Medina*, ¶ 15.

¶ 25    Finally, we reject Hatch's contention that the court failed to ensure he understood the penalties and probationary requirements associated with his plea — specifically, the conditions of SOISP. True, a defendant must have sufficient notice of the direct consequences of a plea. *People v. Marez*, 39 P.3d 1190, 1192-93

13

(Colo. 2002); *see People v. Montaine*, 7 P.3d 1065, 1066 (Colo. App. 1999) ("To satisfy due process concerns that a guilty plea be made knowingly and with a full understanding of the consequences, the trial court must advise [the] defendant of the direct consequences of the plea."). But "[d]irect consequences have been described as those that have a definite, direct, and largely automatic effect on the range of possible punishment." *Marez*, 39 P.3d at 1193. "[A] guilty plea is not rendered invalid by a trial court's failure to warn a defendant of the collateral consequences of his guilty plea." *People v. Birdsong*, 958 P.2d 1124, 1128 (Colo. 1998). At least one division of this court has concluded that the statutory duty to register as a sex offender is a collateral consequence such that a court's failure to advise a defendant of the requirement does not invalidate a guilty plea. *See Montaine*, 7 P.3d at 1067. And Hatch does not cite any authority that reaches a contrary conclusion.

¶ 26    Hatch has not identified any SOISP term that affects the range of punishment to which he is subject as a result of his plea. In other words, Hatch has not established that the SOISP conditions were "[d]irect consequences" about which he had to be advised. *Marez*, 39 P.3d at 1192-93. Accordingly, even if we determined that

14

the court failed to advise Hatch of the SOISP requirements associated with his plea, Hatch has not established that his Crim. P. 11 advisement was deficient.

¶ 27 In any event, the record undermines Hatch's claim that he was not advised as to the probationary requirements associated with his plea. The plea agreement provided Hatch notice that his plea would require him to have "[n]o contact with anyone under 18" and to "[c]omply with registration as required by statute." Hatch separately declared in the plea agreement that he understood and agreed to abide by the "attached" SOISP conditions.[1] And he affirmed at the providency hearing that he had read and understood the plea agreement and discussed its contents with counsel, including the "additional consequences . . . that require your registration, et cetera."

¶ 28 In the end, we perceive no abuse of discretion in the district court's rejection of Hatch's claim that his plea was not knowing,

---

[1] Even if the SOISP conditions were not attached to the plea agreement as Hatch contends, he still has not established that the district court's Crim. P. 11 advisement was inadequate because he has not identified any condition that constitutes a direct consequence of his plea.

voluntary, or intelligent because of an inadequate Crim. P. 11 advisement. *See Medina*, ¶ 17; *Young*, 30 P.3d at 205-06.

### C.   Ineffective Assistance of Counsel

¶ 29    Hatch contends that the district court abused its discretion by denying his Crim. P. 32(d) motion because he received ineffective assistance of counsel. As best we understand, Hatch contends that defense counsel provided ineffective assistance by (1) failing to certify that he advised Hatch as to his rights when entering the plea and (2) failing to investigate witnesses that could provide a viable defense at trial. We conclude that Hatch failed to sufficiently allege an ineffective assistance of counsel claim to warrant a hearing.

### 1.   Applicable Law

¶ 30    A criminal defendant is constitutionally entitled to effective assistance of counsel. U.S. Const. amends. VI, XIV; Colo. Const. art. II, § 16; *see Ardolino v. People*, 69 P.3d 73, 76 (Colo. 2003). "Ineffective assistance of counsel at the time a guilty plea is entered may constitute a fair and just reason to withdraw the plea prior to sentencing." *Kazadi*, ¶ 21.

¶ 31    Claims of ineffective assistance within the context of a plea agreement require the defendant to allege facts that, if true, show

16

that (1) counsel's performance was deficient, in that it fell below the minimum standard guaranteed by the Sixth Amendment; and (2) counsel's deficient performance prejudiced defendant, in that "there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." *People v. Corson*, 2016 CO 33, ¶¶ 34-35 (quoting *Hill v. Lockhart*, 474 U.S. 52, 59 (1985)). It is the defendant's burden to prove both prongs of this test. *Id.* at ¶ 34.

¶ 32    To succeed on a claim of ineffective assistance of counsel, the defendant must allege "particularized facts" that specifically identify "acts or omissions of counsel" that were deficient and resulted in prejudice. *People v. Esquivel-Alaniz*, 985 P.2d 22, 25 (Colo. App. 1999); *see also People v. Lopez*, 12 P.3d 869, 871 (Colo. App. 2000) (a trial court may properly deny a defendant's claim of ineffective assistance during the plea process if the claim contains allegations that are conclusory or are contradicted by the record).

2.    Hatch's Allegations of Ineffective Assistance of Counsel Do Not Provide a Fair and Just Reason to Withdraw His Plea

¶ 33    Hatch first argues that defense counsel was ineffective because he failed to certify in writing that he advised Hatch "of his

17

rights when entering the plea."  In support of this argument, Hatch points only to the fact that counsel failed to sign the "Attorney Signature" line at the bottom of the plea agreement subsection titled, "Attorney Certificate to the Court."

¶ 34   True, defense counsel has a duty to accurately advise clients "regarding the attractiveness of the plea bargain in relation to the risks of going to trial."  *Carmichael v. People*, 206 P.3d 800, 806 (Colo. 2009), *overruled on other grounds by*, *Lafler v. Cooper*, 566 U.S. 156 (2012), *and*, *Missouri v. Frye*, 566 U.S. 134 (2012).  But Hatch has not cited legal authority, nor are we aware of any, establishing that counsel is obligated to certify in writing that they advised their client on such matters.  Thus, Hatch has failed to allege his counsel's performance was deficient.  *See Corson*, ¶¶ 34-35.

¶ 35   To the extent Hatch intends to argue that counsel's *advice* was deficient — not just his failure to certify that he advised Hatch — he fails to allege facts that, if true, establish either element of an ineffective assistance of counsel claim.  *See id.*  Hatch does not specify how counsel's advice during the plea process was inaccurate or deficient.  He does not claim, for example, that counsel failed to

advise him regarding the SOISP conditions that would accompany his guilty plea. Nor has Hatch explained why, if counsel had advised him differently, he would have rejected the plea agreement and insisted on going to trial. *See id.* at ¶ 35. Accordingly, Hatch has not alleged particularized facts that, if true, would entitle him to withdraw his guilty plea on the basis that counsel provided deficient advice. *See id.* at ¶ 34; *Esquivel-Alaniz,* 985 P.2d at 25.

¶ 36 Hatch next contends that defense counsel "did not investigate witnesses and their exculpatory evidence to defend Mr. Hatch" and that "this lack of due diligence was ineffective assistance of counsel." Hatch asserts that, if counsel had interviewed the witnesses, their "testimony would have given [Hatch] a very viable defense at trial."

¶ 37 Again, Hatch does not sufficiently allege facts that, if true, establish a claim of ineffective assistance of counsel. *See Corson,* ¶¶ 34-35. Hatch does not identify any witnesses counsel should have interviewed but did not, specify what testimony those witnesses would have provided, or explain how that testimony would have established a "very viable defense." Nor does Hatch

explain what the "very viable defense" would have been.[2] *See People v. Zuniga*, 80 P.3d 965, 973 (Colo. App. 2003) (claims that counsel conducted an inadequate investigation must explain what investigation counsel should have done, what the results of those efforts would likely have been, and how they would have affected the outcome of the case). Absent these details, Hatch has not alleged particularized facts that would entitle him to withdraw his guilty plea on the basis that counsel's investigation was deficient. *See Corson*, ¶¶ 34-35; *Esquivel-Alaniz*, 985 P.2d at 25.

¶ 38 We conclude that the district court did not abuse its discretion by declining Hatch's request to withdraw his plea under Crim. P. 32(d) due to ineffective assistance of counsel. *See Kazadi*, ¶ 14.

## IV. Disposition

¶ 39 We affirm the district court's order.

JUDGE FREYRE and JUDGE SCHUTZ concur.

---

[2] We acknowledge that, in his reply brief, Hatch adds some detail to his argument, identifying witnesses and how their testimony would have supported a defense at trial. But because those arguments were raised for the first time in his reply brief, we do not address them. *People v. Dominguez*, 2024 COA 32, ¶ 11 (*cert. granted* Dec. 23, 2024).