F I L E D
United States Court of Appeals
Tenth Circuit

June 7, 2005

PATRICK FISHER
Clerk

PUBLISH

UNITED STATES COURT OF APPEALS

TENTH CIRCUIT

UNITED STATES OF AMERICA,

Plaintiff - Appellee,

v.

GEORGE TED LIN; CHEN LIANG KUO,

Defendants - Appellants.

Nos. 04-6011 & 04-6016

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF OKLAHOMA
(D.C. No. CR-03-129-F)

Kindanne C. Jones, of Eddy & Jones, P.C., Oklahoma City, Oklahoma, for George Ted Lin, Defendant-Appellant.

J. David Ogle, of Ogle & Welch, P.C., Oklahoma City, Oklahoma, for Chen Liang Kuo, Defendant-Appellant.

Sanford C. Coats (Robert G. McCampbell, United States Attorney, Randal A. Sengel, Assistant United States Attorney, and Sue Tuck Richmond, Assistant United States Attorney, on the briefs), Assistant United States Attorney, Oklahoma City, Oklahoma, for United States of America, Plaintiff-Appellee.

Before **O'BRIEN, PORFILIO**, and **MCCONNELL**, Circuit Judges.

**PORFILIO**, Senior Circuit Judge.

Following their pleas of guilty to one count of using or causing others to use altered or counterfeit access devices in violation of 18 U.S.C. § 1029, Defendants George Ted Lin and Chen Liang Kuo appeal their 30-month sentences.[1] They contend the district court erred when it enhanced their sentences by combining the credit limits of credit cards found in their possession to determine the amount of loss caused by their acts. They also assert the district court erred by imposing a two level enhancement for altering credit devices.

For the first time on appeal Defendants also contend the court employed sentencing enhancements which violated principles established in *United States v. Booker*, ___ U.S. ___, 125 S. Ct. 738 (2005). We requested post-argument supplemental briefing on the issue and withheld disposition of the appeal until after this court's en banc decision in *United States v. Gonzalez-Huerta*, 403 F.3d 727 (10th Cir. 2005) (en banc). Now, after full consideration of the arguments and the record, we conclude the imposition of the enhancements resulted in no reversible error and affirm the judgment.

Defendants were apprehended with two others during an attempt to purchase merchandise with counterfeit or altered credit cards. Taken from Appellants or found in their vehicle, officers recovered 34 such cards, and merchandise previously obtained by them with credit charges, receipts, and gift cards. Of the total credit cards, Appellants

---

[1] The appeals have not been consolidated, but we treat them together because they involve the same issues and arise from the same prosecution.

used 21 credit card accounts for fraudulent purchases made from Bedford, Texas, to Oklahoma City, Oklahoma.

At the sentencing hearing, the parties stipulated the actual loss in this case was $35,674.80. The court then heard the testimony of a Secret Service Agent who stated persons using fraudulent credit cards generally try to minimize their detection by spreading out their activity over several credit cards, never exceeding the cards' credit limits to avoid creating suspicion. The Agent added that although no manufacturing equipment or devices to encode false magnetic security strips on credit cards were found in the Appellants' possession, Defendant Lin told another Agent "they tried to put foil on the cards . . . to enhance [the] security feature" of cards in the Defendants' possession. No enhanced card itself was introduced. Additionally, the government provided evidence the aggregated credit limits of the 34 cards exceeded $400,000.

Appellants called no witnesses of their own. The only evidence presented in their behalf resulted from searching cross examinations of the government's witness that focused on the weight and credibility of his testimony.

At the conclusion of the testimony, the court offered "some preliminary thoughts." First, it rejected Defendants' position that the credit limits of the cards could not be the basis for the determination of loss under U.S.S.G, § 2B1.1(b). "I hold [as a matter of law] that on the basis of a sufficient evidentiary showing, the Court is authorized under Guideline 2B1.1 to proceed on the basis of the actual credit limit." The court then added,

"[T]he existence of a factual basis for attributing to the defendants an intent resulting in an intended loss at the amount of the credit limit is important and . . . not something lightly to be presumed or found or inferred." The court expressed its belief the intended loss in this case was "more than [$]200,000 but not anywhere close to [$]400,000." It then asked for the response of defense counsel.

The defense focused on attempting to disprove the logic of inferring Appellants' intent from the government's evidence. First, Appellants contended the evidence did not show they intended to use the cards to the credit limits. Next, they argued the sum of $200,000 was not "reasonable" because it contradicted the testimony of the Secret Service Agent that he would "expect a loss in the range of [$]70,000." Then, defense counsel argued the purpose of the guidelines was to "avoid speculation and that's a lot of what we're doing here today [by] being forced to speculate on what their intended loss would have been." One Defendant offered the testimony would support a finding of only $114,000, "which is well in excess of what even the agent . . . estimates the intended loss . . . based on the evidence here." Finally, it was suggested the evidence showed only that Defendants "were attempting to avoid the credit limits."

These arguments notwithstanding, the court was not persuaded to change its view. Drawing on inferences taken from the testimony, the court found that Defendants "would have intended to and it was their intent, had they not been interrupted, to test the limits of the [] cards." The court continued:

> On that basis, referring now to Guideline 2B1.1(b)(1), I find the amount of the loss is to be determined under subparagraph G in that it was more than [$]200,000 but less than [$]400,000. And I do conclude as a matter of law that, . . . given an appropriate evidentiary foundation, the Court is authorized to attribute to the defendants an intended loss equal to the total amount of the credit cards at issue."[2]

Additionally, the court applied an enhancement under U.S.S.G. § 2B1.1(b)(9)(B) for production of an unauthorized access device based upon the Defendants' aborted attempt to enhance the acceptability of a credit card. The court then found the sentencing range to be 30-37 months and sentenced Defendants to 30 months.

Under these circumstances, it is evident constitutional error was committed. *Booker*, 125 U.S. at 749; *Gonzalez-Huerta*, 403 F.3d at 731. Using a preponderance of the evidence standard, the court, and not a jury found facts upon which sentencing enhancements were based. It is equally clear neither Appellant asserted a constitutional impediment to the adoption of the sentencing enhancements.[3] Indeed, their arguments were essentially directed to the weight and credibility of the government's evidence.

---

[2] The court noted this legal conclusion was "influenced" by a similar case from the Eleventh Circuit, *United States v. Manoocher Nosrati-Shamloo*, 255 F.3d 1290 (11th Cir. 2001).

[3] Although Appellants contend in their supplemental *Booker* issue briefs that they objected to the § 2B1.1(b)(9)(B) enhancement on the ground the facts supportive of enhancement "were not alleged in the indictment," (citing pages 148-154 of the sentencing transcript) the record does not sustain the claim. At transcript pages 150-152, where Appellants' counsel presented their arguments on enhancement, the only contention they raised was that the evidence did not justify imposition of the enhancement. Our review fails to disclose at the portion of the record cited by counsel any argument the enhancement facts should have been charged in the indictment.

Nonetheless, the question is whether Appellants have shown the presence of reversible error.

Because the constitutional error was not raised in the district court, we must review the sentencing for plain error. *Gonzalez-Huerta,* 403 F. 3d at 732. To establish plain error, defendants have the burden of demonstrating: (1) error (2) that was plain, and that it (3) affected their substantial rights. *United States v. Cotton*, 535 U.S. 625, 631-32 (2002). If properly established, a reviewing court may correct it if the error affects the fairness, integrity, or public reputation of judicial proceedings. *Id*. at 631-32.

That there is error here has already been noted. It is plain because although unknown to the district court at the time, the sentencing decisions it made were contrary to the principles established in *Booker*. *United States v. Dazey*, 403 F.3d 1147, 1174-75 (10th Cir. 2005) (quoting *Johnson v. United States*, 520 U.S. 461, 468 (1997)). Whether the error in this case affected the Appellants' substantial rights is more difficult.

To carry their burden of establishing the error substantially affected their constitutional rights, the Appellants must show "a 'reasonable probability that, but for the error claimed, the result of the proceeding would have been different.'" *Gonzalea-Huerta,* 403 F.3d at 733 (quoting *United States v. Dominguez Benitez,* 524 U.S. 74, 125 S. Ct. 2333, 2339 (2004)), *Dazey,* 403 F.3d at 1175; *United States v. Clifton*, No. 04-2046, 2005 WL 941581, at *5 (10th Cir. Apr. 25, 2005). Constitutional *Booker* error can be shown to have affected substantial rights "if the defendant shows a reasonable

probability that a jury applying a reasonable doubt standard would not have found the same material facts that a judge found by a preponderance of the evidence." *Dazey,* 403 F.3d at 1175.

Whether we can make that determination here is problematical. First, we have no showing of what a reasonable jury would have done with the evidence relied upon by the court. Because those findings were based upon inferences, it could be argued jurors would not have drawn them as did the court. Yet, the court drew those inferences only because it thought them warranted as a matter of law; therefore, it is equally plausible the jury would have been instructed on that law and would have reached the same result. Resolution of the conflict between those probabilities is not required, however.

We need not determine whether the Appellants can satisfy the burden of showing their substantial rights were affected because even if they did, they must also satisfy us the error seriously affected "the fairness, integrity, or public reputation of judicial proceedings." *United States v. Lawrence*, No. 02-1259, 2005 WL 906582, *12 (10th Cir. Apr. 20, 2005). That test is demanding and is met in the rarest of cases. For example, in *United States v. Trujillo-Terrazas*, No. 04-2075, 2005 WL 880896, at *1 (10th Cir. Apr. 13, 2005), the test was met when a defendant convicted of illegal reentry received a 16-level enhancement for a prior conviction of arson, based upon defendant's throwing a lighted match through a car window resulting in $35 worth of damage. In *United States v. Williams*, 403 F.3d 1188, 1200 (10th Cir. 2005), the burden was also satisfied when the

defendant was sentenced to 210 months for momentarily possessing a firearm that another person had thrust upon him. We believe that whether inferences were improperly drawn from the evidence here does not rise to the onerous level of those cases.

Instead, there was evidence presented to the court which, on its face, would justify the inferences it drew. Even though it can reasonably be argued other inferences are more appropriate, it cannot be said those found by the court were unreasonable. Indeed, it is not suggested, and we cannot find the fairness, integrity, or public reputation of the judicial proceeding was compromised simply because the court's view of the evidence caused it to reach inferences upon which reasonable minds could differ. We must conclude there is no reversible constitutional error in this case.

We therefore turn to Appellants' argument the district court erred by aggregating the credit limits of all the cards in their possession to reach the amount of loss for guideline sentencing purposes. Mindful that we are now undertaking this resolution with the understanding that since *Booker* the Guidelines are not mandatory but are to be consulted in the process of sentencing, we believe the Appellants' arguments are without merit.

The arguments are predicated upon Appellants' theory the district court ignored evidence they did not intend to use the cards to their credit limits. Consequently, they argue, the court's findings are clearly erroneous and should be reversed. Clear error

occurs, however, only when we are left with the firm conviction a mistake has been made. *United States v. Swanson*, 360 F.3d 1155, 1165 (10th Cir. 2004).

We must start from the Guidelines to frame the issues properly. The base offense level for fraud crimes gradually increases by the amount of financial loss attributable to the defendant. U.S.S.G. § 2B1.1(b)(1). The commentary following the guideline, an authoritative interpretive aid in their application, explains how the guideline should be applied. *United States v. Torres-Ruiz*, 387 F.3d 1179, 1181 (10th Cir. 2004). With this direction, we find the amount of loss to be considered is the defendant's intended, rather than actual, loss, if an intended loss can be determined, and if the intended loss exceeds the amount of actual loss. U.S.S.G. § 2B1.1 comment. n. 3(A). To calculate intended loss, the district court is to make only a reasonable estimate of the loss, given the available information. U.S.S.G. § 2B1.1 comment. n. 3(C).

As the court noted in *United States v. Mei*, 315 F.3d 788, 792 (7th Cir. 1993), "in determining an intended loss courts focus on the amount that the scheme placed at risk, not the amount of money or property stolen." *See*, *United States v. Bonanno*, 146 F.3d 502, 509-10 (7th Cir. 1998); *United States v. Strozier,* 981 F.2d 281, 284 (7th Cir. 1992); *see also United States v. Sowels,* 998 F.2d 249, 251 (5th Cir. 1993) (loss occasioned by credit card fraud is the aggregated credit limits of the cards).

Recognizing this court has yet to address how a district court should determine intended loss that arises from a credit card fraud scheme, Appellants urge us to hold the

determination must be made with "reasonable certainty" as that term is used in *United States v. Bolden*, 132 F.3d 1353 (10th Cir. 1997). They argue the cases relied upon by the district court, *Monoocher, Sowels,* and *Mei,* are inapposite because each case dealt with defendants whose criminal activities were grander than their own. They also attempt to show the district court overlooked evidence in drawing the inferences upon which it relied.

Both Appellants maintain the evidence shows conclusively that neither intended to use the maximum credit limit of the cards. Indeed, Mr. Lin asserts, "the evidence presented at sentencing established that defendants had no intention of using the credit cards to the credit limits." Defendant Kuo maintains the government's witness "agreed that the defendants did not intend to use the credit cards to their credit limits. This testimony was the only testimony presented in the courtroom." Neither defendant complies with 10th Cir. R. 28.1 to cite the place in the record where that testimony was given, but our search of the record leads us to conclude those contentions are an exaggeration of the actual testimony.

To the extent the arguments of counsel suggest either Appellant testified and asserted he had no intention of using the full credit limits, the premise is without foundation. Neither testified. Indeed, what the Appellants seem to rely upon is not a positive statement, but an inference made by the government's witness.

On the basis of his experience as an investigator of about forty credit card cases, he stated he would "expect" fraud loss in this case would be "probably . . . maybe 25 percent, 50 percent [of the aggregate credit limits.]." Although that expectation may be subject to the inference placed upon it by Appellants, it is not a positive statement that Lin and Kuo said they had no intention to use the full amount of the credit limits. Indeed, the Agent's statement is merely hypothesis. As such, it is far from evidence so strong that the district court's failure to mention it must lead us to conclude the court clearly erred. What the testimony Appellants rely upon is an assumption or inference made by the witness. That inference, in turn, is based upon anecdotal facts gleaned from investigations he had conducted in the past. However, as the ultimate finder of fact, the district court could draw its own inferences from other facts in evidence. That it did so does not leave us with the firm conviction that a mistake has been made.

Defendant Lin also points to evidence that some of the credit cards were abandoned, having been used only to procure gift cards found in their possession. The contention this evidence contributes to the district court's error overlooks the fact that although abandoned, the cards were used as part of the Appellants' entire scheme. It also avoids the fact that the breadth of the scheme is important because, as noted by the *Mei* court, the purpose of statutes like the one the Appellants violated is to punish the fraudulent *scheme*, not simply the unlawful taking of money or property.

Moreover, as noted by the Seventh Circuit:

The amount of money or property Mei was able to obtain from the counterfeit cards was limited not by his own restraint, but by facts beyond his control. Mei did not know the limits of each stolen credit card number when he obtained it--for all he knew, a skimmed card could have a credit limit of $150 or $150,000 (and one did in fact have a limit of more than $150,000, although it was excluded from the calculation). Some cards when stolen may already have been at or near their limit, so that they did not work when Mei attempted to use them. Or, some of the cards did not work because their rightful owners were delinquent in paying a bill or had previously reported the number stolen. Or, Mei was arrested before he could more fully exploit the scheme. That he was thwarted from extracting the full potential of the cards by events beyond his control does not speak to whether he intended to do less or was less culpable.

*Id* at 793.

The Appellants ground their arguments on the premise that it is the amount of actual loss they have caused that establishes their culpability. This would be a valid premise if *punishment* for the crime of which they were convicted was based upon the money they took. Yet, as the *Mei* court enunciated, 18 U.S.C. § 1029 is a statute that punishes the fraud scheme and not simply the taking of money. Under that circumstance, it is not required that the court make findings with absolute certainty in the determination of a defendant's intent. Once a defendant has engaged in the scheme, culpability is established, and for punishment purposes, only the potential scope of the scheme needs to be determined. This scope is properly inferred from the aggregate credit limits of the credit cards made part of the scheme. *Id.*

- 12 -

Finally, we turn to the two-level enhancement under U.S.S.G. § 2B1.1(b)(9)(B), for "the production or trafficking of any unauthorized access device or counterfeit access device." Again, Appellants challenge the findings on the basis of their own view of the evidence. The enhancement was based on testimony that Mr. Lin and one of the other conspirators had attempted to iron silver foil on several credit cards to transfer silver from the foil to the embossed numbers on the cards. The alleged purpose for attempting to do so was to promote the acceptability of the cards. The court reasoned the sentencing enhancement should pertain because the definition of the word, "produce" includes "altering" under Application note 8(A) to U.S.S.G § 2B1.1. Consequently, the court reasoned *any* form of alteration of a credit device would be the "production" of such a card within the meaning of § 2B1.1(b)(9)(B).

Mr. Lin takes the position that the court's finding about the altered credit card was clearly erroneous, asserting "there is no evidence that defendants were involved in the type of conduct this enhancement is designed to incorporate." First, he argues he pled guilty to unlawful use of credit cards, not "production." He next claims there is "no evidence that [he] engaged in any such activity," or that "the card defendants tried to iron was involved in this offense." Indeed, he asserts, "the uncontroverted evidence establishes that this card was destroyed and discarded." As we shall explain, those assertions are without support.

Mr. Kuo also argues, "[t]here is no evidence that defendants were involved in the type of conduct [USSG § 2B1.1(b)(9)(B)] encompasses." He grounds this argument on the contention the statute to which he pled does not use "alteration" of a credit device as an inclusion within the prohibition of "producing" a counterfeit access device. Therefore, he argues, there is no evidence to support the sentence enhancement. Moreover, as does Mr. Lin, he postulates he only pled guilty to illegal use, not production, and that the altered card was not used by the Appellants.

The evidence in point is only that of the government's agent who testified on cross-examination he did not know whether credit cards were destroyed. He clarified his only knowledge was about all of the credit cards taken from Appellants, and explained the government was able to "read" those cards, "so evidently they're not destroyed if we can slide [them] through our machine." When asked by a co-defendant's counsel whether he was in possession of "melted" cards, the Agent stated:

> The only reference I see in this entire case file regarding melted cards is a statement that George Lin gave to Special Agent Moore where he described that they tried to put foil on the cards because they looked too old or they looked fake, so they wanted to enhance that security feature. They started to iron the cards and he said that they were unable to make the cards look better and he said actually bent some of the cards, they must have curled a little bit from the heat, I don't know.

As we have noted, there was evidence Appellants were involved in altering credit cards -- the type of conduct to which the enhancement applies. What their arguments ignore is that the enhancement was applied, not because of the conduct to which they

- 14 -

entered their plea, but because the alteration of the cards was part of the specific offense characteristics within that conduct. As such, it was subject to inclusion in the calculation of the offense level. Their arguments are without merit and the judgment of the district court is **AFFIRMED**.