**F I L E D**

**UNITED STATES COURT OF APPEALS**

**March 19, 2007**

**TENTH CIRCUIT**

_____

UNITED STATES OF AMERICA,

    Plaintiff-Appellee,

v.

LAVINIA ROSE FOWLER,

    Defendant-Appellant.

Nos. 06-5158; 06-5161
(D.Ct. Nos. 03-CR-177-001-HDC;
06-CR-065-001-HDC)
(N.D. Okla.)

_____

**ORDER AND JUDGMENT**[*]

_____

Before **TACHA**, Chief Circuit Judge, and **BARRETT** and **BRORBY**, Senior Circuit Judges.

_____

    After examining the briefs and appellate record, this panel has determined unanimously that oral argument would not materially assist the determination of this appeal. *See* Fed. R. App. P. 34(a)(2); 10th Cir. R. 34.1(G). The case is therefore ordered submitted without oral argument.

    Defendant Lavinia Rose Fowler appeals her sentences stemming from two

_____

[*] This order and judgment is not binding precedent except under the doctrines of law of the case, *res judicata* and collateral estoppel. It may be cited, however, for its persuasive value consistent with Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

separate district court proceedings, which we consolidate on appeal. In one criminal appeal, Number 06-5161, Ms. Fowler appeals her sentence following her guilty plea to one count of bank fraud and aiding and abetting a criminal in violation of 18 U.S.C. § 1344(1) and (2), and two counts of making and possessing counterfeit securities of organizations in violation of 18 U.S.C. § 513(a). She contends the district court unreasonably imposed the maximum sentencing range, under the United States Sentencing Guidelines ("U.S.S.G." or "Guidelines"), in sentencing her to forty-one months imprisonment. In another criminal appeal, Number 06-5158, Ms. Fowler appeals her sentence following revocation of her supervised release, similarly claiming the district court unreasonably imposed the maximum Guidelines range in sentencing her to fourteen months imprisonment. We exercise jurisdiction pursuant to 18 U.S.C. § 3742 and 28 U.S.C. § 1291 and affirm Ms. Fowler's sentences.

I. Appeal No. 06-5161

A. Factual and Procedural Background
Regarding 41-Month Sentence

The undisputed relevant facts are as follows. On November 13, 2005, Elizabeth Kantor, together with Ms. Fowler, rented a hotel room in Tulsa, Oklahoma, which they intended to use until December 13, 2005, for the purpose of preparing counterfeit checks. On November 17, 2005, Ms. Fowler and Ms.

Kantor presented a counterfeit check, created by Ms. Fowler and made payable to "Lavinia B. Fowler" in the amount of $5,122.12, for deposit into Ms. Kantor's bank account at a branch facility of her bank. Ms. Kantor endorsed the check and gave it and a deposit slip to the bank teller, who credited the check to Ms. Kantor's account. Less than an hour later, Ms. Kantor and Ms. Fowler went to another branch facility of the same bank and presented a counter-check for $3,822.00 made payable to Ms. Kantor. After receiving cash for the check, Ms. Kantor and Ms. Fowler divided the money equally and spent it on personal expenses.

On November 18, 2005, the manager of the hotel asked the police to remove two men from the room rented by Ms. Kantor and Ms. Fowler. Before the police arrived, Ms. Kantor and Ms. Fowler fled the room, failing to pay the hotel bill. When the police searched the room, they found the following items: twenty completed counterfeit checks totaling $11,074.11; a loaded .25 caliber handgun; a Citibank Master Card; blank counterfeit checks; checks made out to "Charlie Moore"; computer equipment; a plastic laminating device; a computer disk containing images of men; and thirty-eight counterfeit identification cards from multiple states in various names.

After leaving the hotel, Ms. Kantor contacted authorities and falsely

reported Ms. Fowler stole her car. On November 26, 2005, police received information from a confidential informant that Ms. Fowler was staying with two men at another hotel in Tulsa, Oklahoma. After the police knocked on her hotel door, a man with a syringe in his shirt pocket answered. After Ms. Fowler and the other man came to the door to speak to the officers, she consented to a search of the room, where police found a computer, scanner, and printer; 2.5 grams of methamphetamine; twenty-one completed counterfeit checks totaling $13,518.35; Ms. Kantor's checkbook; and materials on how to make fraudulent identification cards. An additional counterfeit check in the amount of $469.00 was found in Ms. Kantor's vehicle located outside of Ms. Fowler's hotel. Ms. Fowler admitted to police she paid for the hotel room with two fraudulent checks, identified other checks she fraudulently created, and provided the password to the computer found in her hotel room.

Ms. Fowler pled guilty to one count of bank fraud and aiding and abetting a criminal in violation of 18 U.S.C. § 1344(1) and (2) and two counts of making and possessing counterfeit securities of organizations in violation of 18 U.S.C. § 513(a). After her guilty plea, a probation officer prepared a presentence report in which he determined her base offense level was seven under U.S.S.G. § 2B1.1, but because she possessed a device-making machine, her offense level increased by two levels. In addition, under § 2B1.1(b)(1)(D), which provides for a six-level

-4-

offense increase if the loss caused by the conduct is more than $30,000 and less than $70,000, the probation officer increased Ms. Fowler's offense level by six levels based on his determination the actual and intended loss resulting from her conduct amounted to $31,450.14. However, he subtracted two offense levels under § 3E1.1(a) for Ms. Fowler's acceptance of responsibility, resulting in a total base offense level of thirteen.

In calculating Ms. Fowler's criminal history, the probation officer noted her criminal history points totaled twenty-four, but because she was serving a suspended sentence during her conduct in the instant offense, he added two more points. In addition, because the instant offense was committed less than two years following her release from custody on the prior case, he added one point, for a total of twenty-seven criminal history points and a criminal history category of VI. Calculating Ms. Fowler's total offense level of thirteen, together with a criminal history category of VI, resulted in a Guidelines range of thirty-three to forty-one months imprisonment. Ms. Fowler did not object to the presentence report prior to or at the sentencing hearing.

At sentencing, the district court informed the parties it studied the

presentence report carefully, considered *Booker*[1], other Supreme Court precedent,

the applicable Guidelines, and 18 U.S.C. § 3553[2], and was aware the Guidelines

range was thirty-three to forty-one months imprisonment based on Ms. Fowler's

offense level and criminal history.  The district court also stated "the Guidelines

provide ... a good guidance as to what the sentence should be," it would "impose

a sentence that is sufficient but not greater than is necessary to comply with the

sentencing purposes," and it had considered "the nature and circumstances of the

offense and the history and characteristics of the defendant."  The district court

then sentenced Ms. Fowler to forty-one months imprisonment on each count, to

run concurrently, followed by five years supervised release.  Ms. Fowler raised no

contemporaneous objections to the district court's calculation or explanation of

her sentence, and a judgment was entered on August 4, 2006.


## B.  Discussion

On appeal, Ms. Fowler claims "imposition of the maximum Guideline

sentence was unreasonable."  In support of her argument, she claims the district

court's application of § 2B1.1(b)(1)(D), using the actual and intended monetary

---

[1] *United States v. Booker*, 543 U.S. 220 (2005).

[2] During the sentencing hearing, the district court misstated which statute it considered, stating it considered "§ 3353(a)."  However, given the context in which it discussed the referenced statute, the district court clearly meant 18 U.S.C. § 3553(a).  Neither party suggests the district court did not intend to refer to § 3553, and therefore it is not an issue on appeal.

loss of $31,450.14 for a six-level offense increase, was unjust because she only personally benefitted from the cash she received in the amount of $1,911.00 and unpaid hotel bills totaling $1,266.56. Because the actual loss amount of $3,177.56 is only ten percent of the intended loss amount and the intended loss amount is barely over $30,000, she contends the forty-one-month sentence does not take into consideration the nature and circumstances of her offense or reflect the seriousness of her crime, promote respect for the law, or provide just punishment. While Ms. Fowler concedes that intended loss is a "standard approach" to calculating the proper Guidelines range, she nevertheless argues in her case any enhancement under § 2B1.1 should be based only on actual, rather than intended, loss. She also generally contends her criminal history score of VI "exact[ed] a substantial price for recidivism."

We begin with our standard of review. We review for reasonableness the sentence imposed and have determined a presumption of reasonableness attaches to a sentence, like here, which is within the correctly-calculated Guidelines range. *See United States v. Kristl*, 437 F.3d 1050, 1053-55 (10th Cir. 2006) (*per curiam*). We require reasonableness in two respects – "the length of the sentence, as well as the method by which the sentence was calculated." *Id.* at 1055 (emphasis omitted). When a defendant does not object to the method or procedure by which her sentence was determined, we may reverse the district court's judgment only in

the presence of plain error. *United States v. Ruiz-Terrazas*, ___F.3d ___, ___, 2007 WL 576034, at *2 (10th Cir. Feb. 26, 2007) (slip op.); *United States v. Torres-Duenas*, 461 F.3d 1178, 1182-83 (10th Cir. 2006), *petition for cert. filed* (Nov. 22, 2006) (No. 06-7990). "Plain error occurs when there is (i) error, (ii) that is plain, which (iii) affects the defendant's substantial rights, and which (iv) seriously affects the fairness, integrity, or public reputation of judicial proceedings." *Ruiz-Terrazas*, 2007 WL 576034, at *2. "When reviewing a district court's application of the sentencing guidelines, we review legal questions de novo and any factual findings for clear error, giving due deference to the district court's application of the guidelines to the facts." *United States v. Leach*, 417 F.3d 1099, 1105 (10th Cir. 2005). In so holding, we have concluded a district court's loss calculation, like the one made in this case, is a factual question we review under the clearly erroneous standard. *Id.* at 1105 n.8.

When a defendant's "claim is merely that the sentence is unreasonably long, we do not require the defendant to object in order to preserve the issue." *Torres-Duenas*, 461 F.3d at 1183. Instead, we review for reasonableness the sentence's length, as guided by the factors in 18 U.S.C. § 3553(a). *See id.* The presumption of reasonableness of a sentence within a properly-calculated Guidelines range is a deferential standard a defendant may rebut by demonstrating that the sentence is unreasonable when viewed against the factors in § 3553(a).

*Id.* "When the defendant has not raised any substantial contentions concerning non-Guidelines § 3553(a) factors and the district court imposes a sentence within the Guidelines range, our post-*Booker* precedents do not require the court to explain on the record how the § 3553(a) factors justify the sentence." *United States v. Lopez-Flores*, 444 F.3d 1218, 1222 (10th Cir. 2006), *petition for cert. filed* (Jul. 7, 2006) (No. 06-5217). While "we will not demand that the district court recite any magic words" to support its conclusions, neither will we "presume the district court weighed a party's arguments in light of the § 3553(a) factors where the record provides no indication that it did so and no clear explanation of the sentence imposed." *United States v. Sanchez-Juarez*, 446 F.3d 1109, 1115-16 (10th Cir. 2006) (quotation marks and citations omitted).

Keeping our standard of review in mind, we first address Ms. Fowler's contention her enhancement under U.S.S.G. § 2B1.1 should be based only on actual, rather than intended, loss, which we construe as an attack on the method of calculation and review for plain error. We note the commentary to § 2B1.1 explicitly defines "loss" for the purposes of a sentencing enhancement as "the greater of actual loss or *intended loss*." U.S.S.G. § 2B1.1, cmt. n.3(A) (emphasis added). It further states "intended loss" "means the pecuniary harm that was intended to result from the offense; and ... includes intended pecuniary harm that would have been impossible or unlikely to occur." U.S.S.G. § 2B1.1, cmt.

n.3(A)(ii). While we recognize this Guidelines commentary is now advisory, rather than mandatory, under the principles announced in *Booker*, it continues to be a factor the district court must consider in imposing a sentence. *See Kristl*, 437 F.3d at 1053.

We have repeatedly affirmed the use of the intended loss calculation suggested in § 2B1.1. *See Leach*, 417 F.3d at 1105-06; *United States v. Lin*, 410 F.3d 1187, 1192-94 (10th Cir. 2005); *United States v. Osborne*, 332 F.3d 1307, 1313 (10th Cir. 2003). Thus, when calculating intended loss, we have explained the district court should "focus on the amount that the scheme placed at risk, not the amount of money ... stolen." *Lin*, 410 F.3d at 1192 (quotation marks and citations omitted). In so doing, it is not required the court make findings with absolute certainty in the determination of a defendant's intent. *Id*. at 1193. Instead, the court need only make a reasonable estimate of the loss. *See Osborne*, 332 F.3d at 1313.

Applying these principles, it is clear the district court did not commit any error in including in the § 2B1.1 loss calculation the intended amount of the counterfeiting scheme and not merely the smaller amount of money actually stolen. *See Lin*, 410 F.3d at 1192. In addition, the evidence in the record overwhelmingly establishes the intended loss from Ms. Fowler's counterfeiting

scheme totaled $31,450.14. This amount included the initial counterfeit check in the amount of $5,122.12 deposited in Ms. Kantor's account, the counterfeit checks totaling $11,074.11 found in the first hotel room, the counterfeit checks totaling $13,518.35 found in the second hotel room, the counterfeit check in the amount of $469.00 found in the vehicle, and unpaid hotel bills in the amount of $1,266.56. As a result, the district court did not err in relying on § 2B1.1 to increase Ms. Fowler's offense level by six levels, given the entire loss amount exceeded $30,000. Having determined the district court did not commit an error, our plain error analysis is complete.

Having concluded the district court applied the correct method in calculating Ms. Fowler's sentence, we turn to her general argument that her forty-one-month sentence is otherwise unreasonable under the circumstances. As previously indicated, we do not consider such a claim for plain error. *See Torres-Duenas*, 461 F.3d at 1183. However, because Ms. Fowler's forty-one-month sentence is within the correctly-calculated Guidelines range, a presumption of reasonableness attaches to her sentence. *Id.* Our review of the record and Ms. Fowler's arguments on appeal discloses nothing to rebut this presumption. Moreover, because Ms. Fowler did not raise any substantial contentions concerning the § 3553(a) factors, the district court was not required to explain on the record how the § 3553(a) factors justified the sentence. S*ee Lopez-Flores*,

444 F.3d at 1222. However, as required, the record indicates the district court considered the applicable § 3553 factors in determining the length of Ms. Fowler's sentence. *See Sanchez-Juarez*, 446 F.3d at 1115-16. Because the presumption of reasonableness of a sentence within a properly-calculated Guidelines range is a deferential standard, and Ms. Fowler has not rebutted that presumption with regard to any § 3553(a) factors, we must reject her claim her forty-one-month sentence is unreasonable.

## II.  Appeal No. 06-5158

### A.  Factual and Procedural Background
### Regarding 14-Month Sentence

On August 27, 2004, Ms. Fowler pled guilty to uttering a forged security in violation of 18 U.S.C. § 513(a) and received a sixteen-month sentence followed by three years supervised release. She was released from incarceration and began serving her three-year supervised release on January 21, 2005. On November 16, 2005, at approximately the same time Ms. Fowler commenced the counterfeit check scheme in her other criminal appeal, her probation officer filed a petition alleging Ms. Fowler violated the conditions of her supervised release, including failure to submit monthly reports and notify the probation officer of her change of residence. In the petition, the probation officer stated Ms. Fowler failed to contact him after August 1, 2005, and that her whereabouts were unknown to him.

The district court held a hearing concerning the proposed revocation of Ms. Fowler's supervised release, at which time Ms. Fowler appeared and admitted guilt to violation of the conditions of her term of supervision, stipulating to the facts and allegations in the petition.

Following the hearing, a probation officer prepared a supervised release revocation and sentencing memorandum. The memorandum pointed out that under Federal Rule of Criminal Procedure 32.1 and 18 U.S.C. § 3583(e)(2) and (3) the district court could modify the conditions of release or revoke the term of supervised release and require Ms. Fowler to serve in prison all or part of the term of supervised release. It also noted the maximum custody term for violation of supervised release, a Class C felony, was twenty-four months under 18 U.S.C. § 3583(e)(3). In calculating her sentence in accordance with Chapter 7 of the Guidelines, including § 7B1.4, the probation officer applied Ms. Fowler's criminal history category of VI, together with her Class C felony, to arrive at a Guidelines range of eight to fourteen months imprisonment. Ms. Fowler did not object to the memorandum.

At the subsequent sentencing hearing, the district court revoked Ms. Fowler's supervised release and sentenced her to fourteen months incarceration, to run consecutively to her forty-one-month sentence in her other criminal case.

In imposing a fourteen-month sentence, the district court expressly stated it considered the applicable Guidelines and our decision in *United States v. Lee*, 957 F.2d 770, 771 (10th Cir. 1992), which requires consideration of the advisory policy statements in Chapter 7 on supervised release issues, and that it was imposing a fourteen-month sentence to provide just punishment for Ms. Fowler's supervised release violations and as a deterrent to future criminal conduct. It further stated the sentence length was based on the serious nature of Ms. Fowler's refusal to submit to supervision by the probation officer. Ms. Fowler raised no contemporaneous objection to the district court's calculation or explanation of her sentence and a judgment was entered on August 4, 2006.

## B. Discussion

On appeal, Ms. Fowler claims the district court's "imposition of the maximum Guideline sentence was unreasonable," when viewed under the principle that a sentence imposed following revocation of supervised release must be "reasoned and reasonable." In support, she points out her fourteen-month sentence for a Class C violation of her supervised release is only two months less than her initial sixteen-month sentence for the more "substantive crime" of uttering a forged security. She contends her sentence is unreasonably high for merely failing to report to her probation officer for three months and should not result in a sentence comparable to her original felony sentence. While she does

-14-

not dispute the calculation of the Guidelines range of eight to fourteen months or that the district court generally considered the § 3553(a) factors, she contends the sentence imposed "went beyond what was reasonable to address those factors." She also contends a lesser sentence would have adequately punished her failure to report and also deterred future criminal conduct.

Under 18 U.S.C. § 3583(e)(3), when a person violates a condition of his or her supervised release, the district court may revoke the term of supervised release and impose prison time. *United States v. Kelley*, 359 F.3d 1302, 1304 (10th Cir. 2004). A sentence imposed in excess of that recommended by Chapter 7 of the Guidelines policy statements will be upheld "if it can be determined from the record to have been reasoned and reasonable." *United States v. Rodriquez-Quintanilla*, 442 F.3d 1254, 1258 (10th Cir. 2006) (quotation marks and citation omitted). In reviewing a sentence imposed after revocation of supervised release, we review the district court's factual findings for clear error and its legal conclusions de novo.[3] *Kelley,* 359 F.3d at 1304. In imposing a sentence following revocation of supervised release, a district court is required to consider both Chapter 7's policy statements as well as a number of other factors provided

___

[3] Because Ms. Fowler is not contesting the fact her sentence was imposed consecutively to her other sentence, we need not discuss the recent incongruence in our precedent on the applicable standard of review when reviewing the imposition of consecutive sentences. *See United States v. Cordova*, 461 F.3d 1184, 1188 (10th Cir. 2006).

in 18 U.S.C. § 3553(a). *See Cordova*, 461 F.3d at 1188. However, when the district court "properly considers the relevant Guidelines range and sentences the defendant within that range, the sentence is presumptively reasonable," unless the defendant "rebut[s] this presumption by demonstrating that the sentence is unreasonable in light of the other sentencing factors laid out in § 3553(a)." *Kristl*, 437 F.3d at 1055.

In this case, the district court did not impose a sentence in excess of the recommended Guidelines policy statements. Instead, because Ms. Fowler's fourteen-month sentence falls within the applicable advisory Guidelines range, her sentence is presumptively reasonable. In attempting to rebut this presumption with respect to the § 3553(a) factors, she admits the district court generally considered those factors, but concentrates her efforts on the fact her fourteen-month sentence on revocation of her supervised release is only two months less than her original sixteen-month sentence for her prior felony. However, as the district court explained, it imposed the maximum Guidelines sentence of fourteen months imprisonment to deter future criminal conduct and as "just punishment" for Ms. Fowler's supervised release violations, which included the serious nature of her refusal to submit to supervision by the probation officer. We agree flagrant evasion of probation supervision was a serious violation of her supervised release, and therefore, we cannot say imposition of the maximum Guidelines sentence was

unreasonable.  Under the circumstances presented, Ms. Fowler has not overcome the requisite presumption of reasonableness attached to her fourteen-month sentence.

## III.  Conclusion

For these reasons, we **AFFIRM** Ms. Fowler's sentences in both her criminal appeals, Numbers 06-5161 and 06-6158.

**Entered by the Court:**

**WADE BRORBY**
United States Circuit Judge