**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**August 3, 2005**

**PATRICK FISHER**
**Clerk**

**PUBLISH**

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

UNITED STATES OF AMERICA,

Plaintiff - Appellee,

v.

No. 04-5117

SHERMA LEE LEACH,

Defendant - Appellant.

**Appeal from the United States District Court**
**for the Northern District of Oklahoma**
**(D.C. No. 03-CR-114-H)**[*]

Paul D. Brunton, Julia O'Connell, Barry L. Derryberry, Office of the Federal Public Defender, Tulsa, Oklahoma, for Defendant-Appellant.

David E. O'Melia, Kenneth P. Snoke, Office of the United States Attorney, Tulsa, Oklahoma, for Plaintiff-Appellee.

Before **EBEL**, **McKAY** and **HENRY**, Circuit Judges.

**EBEL**, Circuit Judge.

---

[*]After examining the briefs and appellate record, this panel has determined unanimously to grant the parties' request for a decision on the briefs without oral argument. See Fed. R. App. P. 34(f) and 10th Cir. R. 34.1(G). The case is therefore ordered submitted without oral argument.

Sherma Lee Leach ("Defendant") pled guilty to theft of mail by a postal employee, a violation of 18 U.S.C. § 1709. After accepting Defendant's plea and conducting a sentencing hearing, the district court sentenced Defendant to thirty-seven months' imprisonment, followed by three years' supervised release.[1] On appeal, Defendant challenges the district court's application of the United States Sentencing Guidelines as well as the constitutionality of her sentence under United States v. Booker, 125 S. Ct. 738 (2005). Exercising jurisdiction over this appeal under 28 U.S.C. § 1291 and 18 U.S.C. § 3742, we **REVERSE** Defendant's sentence and **REMAND** for proceedings consistent with this Opinion.

## I.    Factual Background

Defendant was employed by the United States Postal Service ("USPS") in Bartlesville, Oklahoma, as a mail sorter between 1999 and 2003. During this time, Defendant had contact with large volumes of mail addressed to the Voice of the Martyrs ("VOM"), a nonprofit organization that assists Christians around the world who are being persecuted for their faith. The group finances operations through charitable donations sent to its headquarters in Bartlesville.

---

[1]Defendant was also fined $2,000, ordered to pay restitution in the amount of $300, and subjected to a special assessment of $100. On appeal, Defendant does not challenge these aspects of her sentence.

During the same period Defendant was employed with the USPS, VOM began receiving reports from its donors that checks the donors had mailed to VOM were not being cashed. In accordance with its established internal procedure, VOM compiled a log, recording each time it was notified that a donation had not been cashed. VOM also notified postal inspectors, who began a formal investigation at the Bartlesville post office in July 2003.

The investigators observed Defendant hide VOM mail in a post office box and return after her shift to retrieve the mail by accessing the post office box from the lobby. During one of Defendant's trips to the post office box, postal inspectors apprehended Defendant, who was carrying 31 pieces of mail addressed to VOM as well as mail addressed to several other charitable organizations. Defendant admitted to postal inspectors that she had been stealing mail for five or six years and consented to a search of her residence.

The search of Defendant's residence yielded an additional forty-five pieces of discarded mail, most of which were addressed to VOM. The total amount of cash and checks found in Defendant's possession (both on her person and at her residence) on the date of her arrest was $4,707.

## II. Procedural history

On August 23, 2003, the United States Attorney for the Northern District of Oklahoma charged Defendant by information with one count of theft of mail by a

postal employee, a violation of 18 U.S.C. § 1709.[2]  On December 4, 2003,

Defendant petitioned the district court to enter a plea of guilty to the charge

against her.  In her written petition, Defendant expressly admitted to stealing

eighty pieces of mail, but made no admission as to the amount of funds that were

embezzled or the number of victims involved.  Defendant also expressly waived

her right to a jury trial.  The district court held a hearing the same day, accepted

the guilty plea, and set sentencing for March 5, 2004.

Between the time of Defendant's guilty plea and her sentencing, the

Supreme Court issued its decision in Blakely v. Washington, 124 S. Ct. 2531

(2004).[3]  Blakely invalidated the State of Washington's sentencing scheme on

---

[2]Title 18, U.S.C. § 1709 provides:

> Whoever, being a Postal Service officer or employee, embezzles any
> letter, postal card, package, bag, or mail, or any article or thing
> contained therein entrusted to him or which comes into his
> possession intended to be conveyed by mail, or carried or delivered
> by any carrier, messenger, agent, or other person employed in any
> department of the Postal Service, or forwarded through or delivered
> from any post office or station thereof established by authority of the
> Postmaster General or of the Postal Service; or steals, abstracts, or
> removes from any such letter, package, bag, or mail, any article or
> thing contained therein, shall be fined under this title or imprisoned
> not more than five years, or both.

[3]Although Defendant was originally scheduled for sentencing on March 5,
2004, the district court granted a number of continuances.  The last of these
continuances, granted on June 18, 2004, stated that sentencing would be held in
approximately three weeks.  Six days later, on June 24, 2004, the Supreme Court
issued Blakely.  124 S. Ct. at 2531.

Sixth Amendment grounds because the scheme permitted judges to increase a criminal defendant's sentence based on facts neither admitted by a defendant nor proven to a jury.  Id. at 2536-38.  Because Blakely significantly changed the legal landscape of criminal sentencing, the district court permitted the parties to file supplemental briefs discussing the case's applicability to the federal sentencing guidelines.

At this point in the proceedings, there were two disputed factual issues relevant to sentencing: the amount of loss suffered and the number of victims. The district court offered Defendant an opportunity to withdraw her pre-Blakely guilty plea and waiver of jury trial.  Defendant declined the offer, arguing that the earlier waiver of the right to a jury trial applied only to the right to have a jury determine guilt or innocence, not the right to have a jury determine facts relevant to sentencing.[4]  Because Blakely had not been decided at the time Defendant entered her waiver of the right to a jury trial, Defendant argued that she could not have knowingly waived her right under Blakely to a jury determination of facts relevant to sentencing.

_____

[4]Of course, at this point, the Supreme Court had not established such a right in federal criminal prosecutions.  See Blakely, 124 S. Ct. at 2538 n.9. Nevertheless, the district court held as an initial matter that the rationale in Blakely applied to the federal sentencing guidelines and required any judicial fact-finding made by federal courts during sentencing to comply with the Sixth Amendment.

After considering this argument, the district court held that Defendant's pre-Blakely waiver of a jury trial applied both to the guilt-innocence and sentencing phases of the proceedings. That is, the district court held that the Sixth Amendment right to a jury trial was not severable between guilt-innocence and sentencing phases, and that a waiver as to one was a waiver as to the other. The district court then concluded that, in light of Defendant's waiver, it could make factual findings without violating the Sixth Amendment.

Out of an abundance of caution, however, the district court opted to hold a full-blown evidentiary hearing in accordance with the Federal Rules of Evidence and required the Government to prove facts regarding loss amount and number of victims beyond a reasonable doubt.

Under the sentencing guidelines, Defendant's conviction under 18 U.S.C. § 1709 warranted a base offense level of six. See U.S.S.G. § 2B1.1(a)(2) (2003). The district court then imposed a two level enhancement for abuse of a position of trust based on admissions contained in Defendant's guilty plea petition.[5] See U.S.S.G. § 3B1.3.

Next, the court applied two enhancements based on testimony presented at the evidentiary hearing. First, the district court found beyond a reasonable doubt that the amount of loss attributable to Defendant's conduct was $134,571.34.

[5]Defendant does not challenge this enhancement on appeal.

Pursuant to U.S.S.G. § 2B1.1(b)(1)(F), Defendant's offense level was enhanced by ten levels, bringing her total offense level to eighteen. Second, the district court found beyond a reasonable doubt that Defendant's crime involved fifty or more victims and enhanced her offense level by four levels pursuant to U.S.S.G. § 2B1.1(b)(2)(B).

Finally, the court applied a three-level reduction for acceptance of responsibility, see U.S.S.G. § 3E1.1(a)-(b), bringing the total offense level to nineteen. With Defendant's criminal history category of I, the appropriate guidelines range was 30-37 months' imprisonment. The district court imposed the highest possible sentence of thirty-seven months, noting that such a sentence was appropriate because Defendant had abused a position of trust and it was likely that there were many more unidentified victims. The instant appeal followed.

## III. Discussion

On appeal, Defendant raises three issues: First, she challenges the district court's application of U.S.S.G. § 2B1.1(b)(2)(B), arguing that the district court incorrectly concluded that Defendant's crime involved fifty or more victims. Second, she argues that the district court incorrectly applied U.S.S.G. § 2B1.1(b)(1)(F) by miscalculating the amount of loss attributable to Defendant. Finally, Defendant argues that the enhancements to her sentence under U.S.S.G. § 2B1.1(b)(2)(B) and (b)(1)(F) violated her Sixth Amendment right to trial by jury

because the district court engaged in unconstitutional fact finding.  See Blakely, 124 S. Ct. at 2536-38, Booker, 125 S. Ct. 755-56 (applying Blakely's holding to the federal sentencing guidelines).  Because the last of these three issues has the potential to be dispositive, we consider it first.

### A.    Booker/Blakely violation

In Booker, the Supreme Court held that for federal sentences, "[a]ny fact (other than a prior conviction) which is necessary to support a sentence exceeding the maximum authorized by a plea of guilty or a jury verdict must be admitted by the defendant or proved to a jury beyond a reasonable doubt."  125 S. Ct. at 756.  Defendant raises constitutional Booker error,[6] arguing that her Sixth Amendment rights were violated when the district court made factual findings regarding the amount of loss and the number of victims that enhanced her offense level by fourteen points.

A defendant's right to a jury trial at sentencing, just like the right to a jury trial at the guilt-innocence phase, can be voluntarily waived.  Here, defendant's guilty plea (which was entered prior to the Supreme Court's decisions in Blakely and Booker) contained such a waiver.  Our task, then, is to determine whether this waiver applies to Defendant's rights under Booker.

_____

[6]See United States v. Gonzalez-Huerta, 403 F.3d 727, 731-32 (10th Cir. 2005) (en banc) (describing the difference between constitutional and non-constitutional Booker error).

## 1. Waiver[7]

A waiver is the intentional relinquishment or abandonment of a known right or privilege. United States v. Chavez-Salais, 337 F.3d 1170, 1172-73 (10th Cir. 2003). Here, when submitting her petition to plead guilty, Defendant also executed a written waiver of her Sixth Amendment right to a jury trial which read as follows:

> Comes now the undersigned defendant having been fully apprised of my rights, do hereby waive a jury and agree to try the above styled and numbered criminal proceedings to the Court as provided by Rule 23(a), Rules of Criminal Procedure.

In addition, Defendant's petition to plead guilty contained the following statement regarding her waiver of constitutional rights:

> WAIVER OF CONSTITUTIONAL RIGHTS
>
> I know I have the right to plead "NOT GUILTY" to any offense charged against me. If I plead "NOT GUILTY" I know the Constitution guarantees me . . . the right to a speedy and public trial by jury . . . .
>
> In regard to my right to a jury trial, I know I am the only person who can waive, that is give up, that right. I also fully understand that if I have a trial by a jury, I have the right of the assistance of an attorney; also the right to confront and cross-examine witnesses against me; and the right not to be compelled to incriminate myself. Furthermore, I understand that to convict me, all 12 jury members would have to agree that I am "GUILTY."

---

[7]As an initial matter, we note that our precedent forecloses Defendant's contention that constitutional Booker is structural error. United States v. Dowlin, 408 F.3d 647, 668-69 (10th Cir. 2005).

On appeal, Defendant argues that since her initial waiver was entered before the Supreme Court decided <u>Booker</u> or <u>Blakely</u>, she could not have waived jury trial rights created by those decisions because they did not yet exist. We disagree. As the Sixth Circuit has recognized,

> [p]lea agreements . . . may waive constitutional or statutory rights then in existence as well as those that courts may recognize in the future. . . .
>    [W]here developments in the law later expand a right that a defendant has waived in a plea agreement, the change in law does not suddenly make the plea involuntary or unknowing or otherwise undo its binding nature.

<u>United States v. Bradley</u>, 400 F.3d 459, 463 (6th Cir. 2005), <u>petition for cert. filed</u> (June 9, 2005) (No. 04-10620). Citing <u>Bradley</u>, this court has held that a waiver of appellate rights was not rendered unknowing or involuntary by the Supreme Court's subsequent issuance of <u>Booker</u> or <u>Blakely</u>. <u>United States v. Green</u>, 405 F.3d 1180, 1190 (10th Cir. 2005). Similarly, we do not believe these decisions should negate waivers of other constitutional rights, such as the right to a trial by jury.

Furthermore, the record indicates that after <u>Blakely</u> was decided, the district court offered Defendant an opportunity to withdraw her guilty plea and waiver of jury trial rights, an opportunity Defendant refused. If there was any doubt as to the scope or voluntariness of Defendant's pre-<u>Blakely</u> waiver, that

doubt was erased when Defendant, having full knowledge of <u>Blakely</u>, declined the offer to withdraw her plea.

### 2. Conclusion

Because Defendant waived, without qualification, her right to a jury trial in her guilty plea, we conclude that she may not now assign as error the failure of the district court to afford her a jury determination of facts relevant to sentencing. We will, however, consider Defendant's two points of error related to the district court's application of the guidelines.

### B. Application of U.S.S.G. § 2B1.1(b)(1)(F): Loss attributable to Defendant

Based on evidence presented at the sentencing hearing, the district court found beyond a reasonable doubt that the monetary loss attributable to Defendant's conduct was $134,571.34. This finding permitted the court to apply a sentencing enhancement under U.S.S.G. § 2B1.1(b)(1)(F), which permits a ten-level increase in a defendant's offense level if the loss suffered exceeds $120,000 but is not more than $200,000. On appeal, Defendant argues that the district court miscalculated the loss attributable to her conduct and therefore erroneously applied the guideline enhancement. When reviewing a district court's application of the sentencing guidelines, we review legal questions de novo and any factual findings for clear error, giving due deference to the district court's application of

the guidelines to the facts.  United States v. Doe, 398 F.3d 1254, 1257 (10th Cir. 2005).[8]

In calculating the loss attributable to defendant, the district court "need only make a reasonable estimate of the loss."  U.S.S.G. § 2B1.1 cmt. n.3(C).  The sentencing judge is in a unique position to assess the evidence and estimate the loss based upon that evidence.  Id.  For this reason, the court's loss determination is entitled to appropriate deference.  Id.  (citing 18 U.S.C. § 3742(e) and (f)).

Here, the district court relied on an exhibit furnished by VOM which purported to estimate the amount of contributions lost from 1999 to 2003, the period during which Defendant was a USPS employee.  During this time, each time a check was reported uncashed, VOM (acting pursuant to its internal policy) made an entry into a spreadsheet.  This report contained the date each undelivered check was reported, the check number, the donor's name and address, the amount of the donation, and the estimated date the donation was mailed.  The total number of donations reported lost during this period was $253,555.42 ("the gross loss").

However, it appears that some of the donors who reported uncashed checks sent in "replacement donations" when they were informed that their original

_____

[8]A district court's loss calculation at sentencing is a factual question we review under the clearly erroneous standard.  United States v. Levine, 970 F.2d 681, 690 (10th Cir. 1992).

donations had not been received by VOM. A donation was categorized by VOM as a "replacement donation" when it was (1) the same amount as the original donation; (2) received within four months of the notification that the original donation did not arrive; and (3) not part of a fixed program of systematic giving. These "replacement donations" totaled $134,571.34.

The district court concluded that the Government had shown by a preponderance of the evidence that the loss attributable to Defendant was equivalent to VOM's gross loss of $253,555.42. However, the court chose to require the Government to prove the loss attributable to Defendant beyond a reasonable doubt, and it concluded that the Government had not presented enough evidence that VOM actually suffered a loss in this amount. Instead, the court relied upon evidence of replacement checks in determining the loss attributable to Defendant:

> The Court finds that the fact that a contributor sent a replacement check in the same amount after learning that the original check did not arrive establishes beyond a reasonable doubt that the check had been sent in the first place. Thus, the loss to VOM established beyond a reasonable doubt is $134,571.34.

Defendant assails this evidence as merely the "guesswork of VOM employees" and argues that the district court should not have relied upon it in making its sentencing determination. We disagree. Although the replacement donations were not, in a strict sense, a measure of the money Defendant caused

VOM to lose (since VOM ultimately received these funds), the donations are evidence of the loss Defendant *intended* VOM to suffer. See U.S.S.G. § 2B1.1 cmt. n.3(A) ("loss is the greater of actual loss or intended loss").

Therefore, after considering all of the evidence in the record, we cannot say that the district court clearly erred in its calculation of the loss attributable to Defendant. As a result, the court's application of the enhancement under U.S.S.G. 2B1.1(b)(1)(F) was proper.

## C.    Application of U.S.S.G. § 2B1.1(b)(2)(B): Number of victims

Defendant also challenges the district court's conclusion that her offense involved fifty or more (but less than 250) victims, which justified a four-level enhancement, pursuant to U.S.S.G. § 2B1.1(b)(2)(B). We review the court's legal determinations de novo and its factual finding for clear error. Doe, 398 F.3d at 1257.

The commentary to U.S.S.G. § 2B1.1 defines a "Victim" as "any person who sustained any part of the actual loss determined under subsection (b)(1); or any individual who sustained bodily injury as a result of the offense."[9] U.S.S.G. § 2B1.1 cmt. n.1. In a case in which undelivered United States mail was taken, "'victim' means (I) any victim as defined in Application Note 1; or (II) any

---

[9]Under this guideline, the term "Person" includes individuals as well corporate entities. U.S.S.G. § 2B1.1 cmt. n.1.

person who was the intended recipient, or addressee, of the undelivered United States mail." Id. cmt. n.4(B)(i).

At the time of her arrest, Defendant was in possession of mail addressed to eight separate people or entities.[10] Based on VOM's exhibit, however, the district court found that "over 200 people reported undelivered donations and incurred the expense of writing and mailing a replacement check." These expenses, the court concluded, qualified the senders of the uncashed checks as "victims" under U.S.S.G. § 2B1.1. We disagree.

As an initial matter, it is undisputed that none of these 200 people were intended addressees of the undelivered mail, nor did they suffer any bodily injury as a result of the offense. Cf. U.S.S.G. § 2B1.1 cmt. n.1, 4(B)(i)(II). Thus, the only relevant definition of "Victim" is "any person who sustained any part of *the actual loss determined under subsection (b)(1)*[.]" Id. cmt. n.1 (emphasis added). "Actual loss" is defined as "the reasonably foreseeable pecuniary harm that resulted from the offense." Id. cmt. n.3(A)(i). While we agree that the cost of sending in replacement checks was a reasonably foreseeable pecuniary harm of Defendant's conduct, this harm was not included as part of the actual loss "determined under subsection (b)(1)." Id. cmt. n.1. There was no testimony

---

[10]The envelopes were addressed to VOM, Prayer by Letters, Saint Matthews Church, Southwest Indian Children's Fund, Word of Faith, Robert Tilton Ministries, and two private residences in Bartlesville.

- 15 -

presented at the sentencing hearing regarding the type and amount of loss suffered *by donors*. Rather, the court's calculation of the actual loss was merely an estimation of the amount of funds Defendant intended to take *from VOM*. That calculation did not include any estimation of "replacement costs" incurred by donors who sent in additional checks.

Because the loss suffered by these 200 donors was not part of the actual loss determined by the court under U.S.S.G. § 2B1.1(b)(1)(F), the district court erred by counting the donors as "victims" for the purposes of an enhancement under U.S.S.G. § 2B1.1(b)(2).[11]

## IV. Conclusion

We conclude that Defendant's sentence is neither infected with constitutional error under <u>Booker</u> nor an improper enhancement based on the amount of loss. However, the district court's error in the application of U.S.S.G. § 2B1.1(b)(2) requires a reversal. Accordingly, we **REVERSE** Defendant's sentence and **REMAND** for proceedings consistent with this opinion.

---

[11]We cannot conclude that this error was harmless. <u>See</u> Fed. R. Crim. P. 52(a). Without these 200 individuals, Defendant's crime involved only eight discernable victims. If this were the case, no enhancement based on the number of victims would be appropriate under the guidelines. <u>See</u> U.S.S.G. § 2B1.1(b)(2) (requiring at least 10 victims for an enhancement). Without the enhancement, the maximum sentence Defendant could have received would have been twenty-four months' imprisonment, thirteen months less than the thirty-seven month sentence she actually received. In effect, the district court's error increased Defendant's maximum sentence by more than fifty percent.