BEA, Circuit Judge,
dissenting:
At the conclusion of Moore’s sentencing hearing, the district court held the individuals from whose bank accounts Moore stole money suffered “actual pecuniary losses,” and thus qualified as “victims” of Moore’s offense under the Sentencing Guidelines. To my surprise, the majority remands for resentencing because, despite the language just quoted, the district court purportedly failed to include the losses suffered by the individual account holders in its determination of “actual loss” under the Guidelines. See Maj. Op. at 17. Much like the unfortunate victims in this ease, I find myself at a loss: I simply cannot reconcile the district court’s expressed finding the individual account holders suffered “actual pecuniary losses” with the majority’s puzzling assertion these individual account holders’ losses were not included in the district court’s determination of “actual loss.” There is simply no other “actual loss” to which the district court could have been referring in its decision. Accordingly, I must respectfully dissent.
Rahsaan Moore admittedly conspired to steal hundreds of thousands of dollars from the bank accounts of over forty individuals. At issue in this appeal is whether the district court abused its discretion in concluding at least three of these individuals suffered “actual losses,” such that they can be considered “victims” for purposes of sentence enhancement under the Guidelines.[1] See U.S.S.G. § 2B1.1 app. n. 1. In support of its contention these individuals suffered actual losses, the government *19 submitted to the district court nine victim impact statements, which described various expenses incurred by the individual account holders while they dealt with the aftermath of the fraud perpetrated on their accounts. These expenses included mileage costs, lost wages due to missed work, and postage expenses, all of which qualify as “actual losses” as defined by the Guidelines. See U.S.S.G. § 2B1.1 app. n. 3(A)(i) (defining “actual loss” as “the reasonably foreseeable pecuniary harm that resulted from the offense.”).
In its sentencing memorandum submitted to the district court, the government expressly contended the individual account holders suffered actual pecuniary losses, and thus qualified as victims under the Guidelines. During the sentencing hearing, the government reiterated this contention. At the conclusion of the hearing, the district court expressly ruled in favor of the government on this issue:
There are a number of issues raised by [Moore] that I resolve in favor of the government in terms of the amount of loss and in the number of victims .... I certainly considered, looking at those victim’s statements ... were there actual ‘pecuniary losses there, and I felt the record did establish that; so I believe both in number of victims and amount of loss we end up at [offense] level 22.
(emphasis added).
Surprisingly, despite the district court’s express holding the individual account holders suffered “actual pecuniary losses,” the majority nevertheless concludes the district court failed to include the losses suffered by these account holders in its determination of “actual loss.”[2]
The majority appears to have been confused by the district court’s restitution order, which excluded the above-described losses incurred by individual account holders. See Maj. Op. at 16-17. The calculation of victims’ losses for purposes of restitution, however, is distinct from the loss determination underlying the sentence enhancement at issue here, and is governed *20 by an entirely separate statutory scheme. See 18 U.S.C. §§ 3663, 3663A.
Here, in its sentencing memorandum, the government stated — for purposes of restitution only — that calculating the precise amount of the loss incurred by each individual account holder would be impractical, because the victims typically did not keep specific records or receipts for these losses. See 18 U.S.C. § 3663A(c)(3)(B) (stating restitution that would otherwise be mandatory under 18 U.S.C. § 3663A for a crime involving fraud is not required if “determining complex issues of fact related to the cause or amount of the victim’s losses would complicate or prolong the sentencing process to a degree that the need to provide restitution to any victim is outweighed by the burden on the sentencing process”). Nevertheless, in its sentencing memorandum, the government reiterated:
Though, we are suggesting these costs not be included as specific restitution obligations, the United States still contends the individuals who incurred these types of reasonably foreseeable pecuniary expenses, should be considered victims for purposes of the sentencing enhancement for number of victims.
Id. at 10.
The government’s position is entirely consistent with the text of the governing statutes. Unlike restitution, which by its nature requires the calculation of a precise dollar amount, the Guidelines require that “actual loss” be calculated only in terms of broad ranges. Here, for purposes of the Guidelines loss calculation, the district court concluded the total loss caused by Moore’s offense was between $400,000 and $1,000,000. Moore does not dispute this finding, or the resulting 14-level increase in his base offense level imposed pursuant to the Guidelines. See U.S.S.G. § 2Bl.l(b)(l)(H) (mandating a 14-level increase in the defendant’s offense level where the loss is between $400,000 and $1,000,000).
Accordingly, in holding for the government “in terms of the amount of loss and in the number of victims,” the district court necessarily found that for purposes of sentence enhancement under the Guidelines, the “actual loss” caused by Moore’s offense included both the $543,959.26 the court ordered Moore to pay in restitution and the “actual pecuniary losses” the court expressly determined were suffered by the individual account holders (i.e., the incidental losses described in the victim impact statements).[3] The majority’s contrary holding is simply perplexing.
United States v. Leach, 417 F.3d 1099 (10th Cir.2005), cited by the majority, is inapposite. See Maj. Op. at 17. In Leach, the Tenth Circuit held that because the district court failed to include losses allegedly suffered by donors to a nonprofit organization in its determination of actual loss, the donors did not qualify as victims *21 under the Guidelines. Id. at 1106-07. In Leach, however, the district court explicitly determined the “total loss” for purposes of sentence enhancement under the Guidelines was $134,571.34, an amount which unquestionably excluded any losses incurred by the donors. Id. at 1103, 1107. The district court made no such determination in this case. To the contrary, it explicitly held the individual account holders (“victims”) suffered “actual pecuniary losses” as a result of Moore’s offense.
Moreover, the Tenth Circuit in Leach rested its holding, in part, on the fact “[t]here was no testimony [or other evidence] presented at the sentencing hearing regarding the type and amount of loss suffered by donors.” (emphasis in original). Here, in contrast, the district court was given ample evidence of the losses suffered by the individual account holders — the victim impact statements.
Most importantly, the district court in Leach based its Guidelines loss calculation on the amount of funds the defendant intended to take from the nonprofit organization. See U.S.S.G. § 2B1.1 app. n. 3(A) (stating “loss is the greater of actual loss or intended loss”). The Guidelines, however, define “victim,” in relevant part, to include only those people who suffered part of the “actual loss” determined under U.S.S.G. § 2B1.1(b)(1). See U.S.S.G. § 2B1.1 app. n. 1. Thus, because the district court in Leach based its loss calculation only on intended loss, the actual losses allegedly suffered by the donors necessarily were excluded from the district court’s loss determination. Here, in contrast, the district court based its loss determination on actual losses — including the incidental losses suffered by the individual account holders — not intended losses.
For the benefit of the parties, I emphasize what the majority does not hold in its opinion. The majority does not hold the losses described in the victim impact statements fail to qualify as “actual losses” based on the Guidelines’ substantive definition of this term. See U.S.S.G. § 2B1.1 app. n. 3(A)(i), (iii), (iv). Instead, based on an apparent misreading of the record, the majority remands for resentencing only because the district court purportedly failed to include these losses in its determination of “actual loss” under U.S.S.G. § 2Bl.l(b)(l). Thus, as I read the majority opinion, if the district court utters the following magic words on remand, “and I hereby include the losses mentioned in the victim impact statements (which statements I have read) in my actual loss determination under U.S.S.G. § 2Bl.l(b)(l),” the majority’s concerns will be satisfied, and the sentence will be affirmed.[4]
I would not impose such a “magic words” requirement, because the district court has already made two expressed findings which, by any reasonable interpretation, contain the very substance of these “magic words” and show that the district court made the necessary determination of including the losses described in the victim impact statements as part of the “actual loss”:
1. “I resolve [these issues] in favor of the government in terms of the amount of loss and in the number of victims.” One has only to look at the government’s sentencing memorandum to determine what it was the government was arguing and which the district court resolved in the government’s favor.[5]
*22 2. “I certainly considered, looking at those victim’s statements ... were there actual pecuniary losses there, and I felt the record did establish that; so I believe both in number of victims and amount of loss we end up at [offense] level 22.”[6] This is an expressed finding that the victims’ statement proved actual pecuniary losses, and a ratification of the findings set forth in the preceding paragraph regarding loss and number of victims.
Finally, I agree with the majority’s holding that because the government failed to raise its contention the individual account holders qualify as victims based on the money that was taken from their accounts (and subsequently reimbursed by their respective financial institutions) to the district court, the government waived this claim for purposes of this appeal. See Maj. Op. at 17. I note, however, the government may raise this contention on remand. See United States v. Matthews, 278 F.3d 880, 885-86 (9th Cir.2002) (en banc) (holding that on remand “the district court generally should be free to consider any matters relevant to sentencing, even those that may not have been raised at the first sentencing hearing, as if it were sentencing de novo.”). See also United States v. Lee, 427 F.3d 881, 895 (11th Cir.2005) (holding temporary financial losses that are subsequently reimbursed by a third party may constitute losses under the Guidelines).

. It is undisputed the seven financial institutions from which Moore and his co-conspirators stole money qualify as victims. Thus, if three of the individual account holders qualify as victims, there were 10 or more victims of Moore's offense, the sentence enhancement applies, and we must affirm. See U.S.S.G. § 2B 1.1 (b)(2)(A).

. During the sentencing hearing, the government attorney stated "in figuring the loss I have used only the loss on the accounts that are mentioned in the plea agreement.” The majority contends that by making this statement, the government somehow waived its contention the individual account holders suffered "actual losses” and thus qualify as "victims” under the Guidelines. See Maj. Op. at 17 n. 1.
The majority is wrong. Moments after making this statement, the government attorney expressly reiterated the government's contention the individual account holders suffered actual pecuniary losses and thus qualified as victims under the Guidelines; accordingly, the attorney urged the court to find the individual account holders were "victims,” just as it had in a similar prior case: "With respect to the number of victim issues, ... it has been before the Court the same argument in Christopher Williams’ case and the Court accepted the pecuniary loss as reflected in the victim impact statements.” (emphasis added). Defense counsel responded to this assertion minutes later, contending the incidental losses described in the victim impact statements did not qualify as actual losses under the Guidelines, and thus the individual account holders should not be counted as victims: "With regard to the issue of the definition of victims in the guidelines, ... [the victim impact statements] do not provide evidence of pecuniary harm, pecuniary loss, as it was intended to be applied in this narrow context by the Sentencing Commission.” Thus, while the majority remains unconvinced, it was clear to both parties at the sentencing hearing that the government was advocating an actual loss determination that included the incidental losses described in the victim impact statements.
To the extent the government attorney's statements during the sentencing hearing arguably were ambiguous, any ambiguity was ineluctably resolved by the district court’s express finding that the individual accounts holders suffered "actual pecuniary losses.” The majority conspicuously fails to mention this finding anywhere in its decision.

. I further note that, given the undisputed $543,959.26 loss incurred by the financial institutions, the precise amount of the incidental losses suffered by the individual account holders — which, at most, amounted to a few thousand dollars — could not possibly have changed the district court's determination under U.S.S.G. § 2B 1.1 (b)(1)(H) that the "actual loss" caused by Moore’s offense was between $400,000 and $1,000,000. Thus, there was no need for the district court to calculate these losses with precision when making its "actual loss” determination. As defense counsel noted at sentencing, "I don’t think there's any way to nail ... down ... a precise figure." See also U.S.S.G. § 2B1.1 app. n. 3(C) ("Estimation of Loss. — The court need only make a reasonable estimate of the loss. The sentencing judge is in a unique position to assess the evidence and estimate the loss based upon that evidence. For this reason, the court’s loss determination is entitled to appropriate deference.”) (emphasis added).

. I do not read the majority opinion as requiring the district court to state a precise amount for the losses suffered by the individual account holders. Such a requirement would be contrary to the text of the Guidelines themselves. See supra note 2.

. In its sentencing memorandum, the government argued: "A 'victim' for purposes of *22 Guideline 2B1.1, includes any person who sustained any part of the actual loss determined under subsection (b)(1).... [The individual account holders] should be considered victims insofar as they suffered the reasonably foreseeable pecuniary costs of dealing with the theft of their personal information, which includes mileage to and from banks to open and close accounts, or to make statements to bank investigators or law enforcement, the cost of postage and phone calls to banks, brokers, and credit bureaus to alert them to the compromise of their financial accounts, and the cost of new checks for their new accounts. 'Reasonably foreseeable pecuniary harm' should also include the time off work victims report taking to deal with the aftermath of the fraud on their accounts.”

. There is no conceivable application of the Guidelines that would compute to "level 22" without including the 2-level enhancement for 10 or more victims. Here, the calculation was as follows: base offense level of 7, U.S.S.G. § 2B1.1(a)(1), plus 2-level increase under U.S.S.G. § 2Bl.l(b)(10) (possession of device-making equipment), minus 3-level reduction under U.S.S.G. § 3El.l(a),(b) (acceptance of responsibility), plus 14-level enhancement under U.S.S.G. § 2B1.1(b)(1)(H) (actual loss between $400,000 and $1,000,000) plus 2-level enhancement under U.S.S.G. § 2B 1.1(b)(2)(A) (10 or more victims) = Guidelines offense level of 22.