**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS FOR THE NINTH CIRCUIT

| | |
|---|---|
| UNITED STATES OF AMERICA, *Plaintiff-Appellee*, <br><br> v. <br><br> CARLOS JONATHAN GONZALEZ BECERRA, AKA Carlos Jonathan Gonzalez, AKA Jonathan Becerra, AKA Carlos Jonathan Becerra, *Defendant-Appellant*. | No. 13-50381 <br><br> D.C. No. 2:07-cr-00812-DSF-1 <br><br><br> OPINION |

Appeal from the United States District Court
for the Central District of California
Dale S. Fischer, District Judge, Presiding

Submitted March 3, 2015[*]
Pasadena, California

Filed April 14, 2015

Before: Michael R. Murphy,[**] Ronald M. Gould,
and Richard C. Tallman, Circuit Judges.

Opinion by Judge Murphy

---

[*] The panel unanimously finds this case suitable for decision without oral argument.  Fed. R. App. P. 34(a)(2).

[**] The Honorable Michael R. Murphy, Senior Circuit Judge for the U.S. Court of Appeals, Tenth Circuit, sitting by designation.

## SUMMARY[***]

---

### Criminal Law

The panel affirmed a sentence for possession of stolen mail in a case in which the district court increased the defendant's offense level pursuant to U.S.S.G. § 2B1.1(b)(2)(B) because the offense involved 50 or more victims.

The district court relied on Sentencing Guidelines commentary, U.S.S.G. § 2B1.1 cmt. n.4(C), which provides that the term "victim" encompasses "any person who was the intended recipient, or addressee, of . . . undelivered United States mail."

The defendant argued that the commentary definition is inconsistent with the definition in § 2B1.1, and that application of the commentary was therefore error, because § 2B1.1 is a fraud guideline, and within that context "victim" includes only individuals who suffered pecuniary loss.

The panel held that § 2B1.1 is not limited to crimes involving fraud and the term "victim" is commonly understood to include a broader class of individuals than those who suffered a monetary loss. The panel therefore concluded that the special definition of the term "victim" set out in the commentary regarding the theft of undelivered mail is perfectly consistent with the use of that term in the text of

---

[***] This summary constitutes no part of the opinion of the court. It has been prepared by court staff for the convenience of the reader.

§ 2B1.1, and the district court did not err in increasing the defendant's offense level pursuant to § 2B1.1(b)(2)(B).

## COUNSEL

Sean K. Kennedy, Federal Public Defender, and Michael Tanaka, Deputy Federal Public Defender, Los Angeles, California, for Defendant-Appellant.

André Birotte Jr., United States Attorney; Joseph B. Widman, Assistant United States Attorney, Chief, Riverside Branch; and Tritia L. Yuen, Assistant United States Attorney, Los Angeles, California, for Plaintiff-Appellee.

## OPINION

MURPHY, Circuit Judge:

### I. INTRODUCTION

Carlos Gonzalez Becerra pleaded guilty to possessing stolen mail, in violation of 18 U.S.C. § 1708. In calculating his advisory sentencing range under the United States Sentencing Guidelines, the district court increased Gonzalez Becerra's offense level by four because the offense "involved 50 or more victims." U.S.S.G. § 2B1.1(b)(2)(B). The district court relied on the commentary to § 2B1.1, which provides that the term "victim" encompasses "any person who was the intended recipient, or addressee, of . . . undelivered United States mail." *Id.* § 2B1.1 cmt. n.4(C).

Gonzalez Becerra asserts the district court erred in relying on the definition of "victim" in the commentary because that definition is inconsistent with the text of the guideline itself. *Cf. Stinson v. United States*, 508 U.S. 36, 38 (1993) ("[C]ommentary in the Guidelines Manual that interprets or explains a guideline is authoritative unless it violates the Constitution or a federal statute, or is inconsistent with, or a plainly erroneous reading of, that guideline."). In particular, he contends § 2B1.1 is a "fraud guideline" and, within that context, the term "victim" is commonly understood to include only individuals who suffered pecuniary loss. He further asserts the use of the term "victim" in the text of § 2B1.1 necessarily incorporates into the guideline this common understanding. Thus, according to Gonzalez Becerra, because the commentary includes within its definition of victims individuals who did not suffer a pecuniary loss, the commentary is inconsistent with the guideline.

Gonzalez Becerra's argument is unpersuasive. Section 2B1.1 is not limited to crimes involving fraud and the term "victim" is commonly understood to include a broader class of individuals than those who suffered a monetary loss. Thus, exercising jurisdiction pursuant to 28 U.S.C. § 1291 and 18 U.S.C. § 3742, this court **affirms** the sentence imposed by the district court.

## II.  BACKGROUND

### A.  Factual Background

Gonzalez Becerra's prosecution for possession of stolen mail grew out of a traffic stop. Gonzalez Becerra was the driver of the vehicle; Angela Okos was his passenger. During the stop, Gonzalez Becerra was unable to provide a driver's

license.  While searching him for identification, officers found three credit cards, none of which was in Gonzalez Becerra's name.  Inside the vehicle, officers found a piece of mail addressed to another person, sheets of paper containing personal identifying information of numerous individuals, and a Mexican identification card in the name of Carlos Jonathan Gonzalez.[1]  The next day, officers executed a search warrant at Gonzalez Becerra's residence.  The search revealed that Gonzalez Becerra possessed a large quantity of stolen mail.  Including the mail found in both his car and house, Gonzalez Becerra possessed the mail of slightly less than 250 individuals.  The items in that stolen mail included 43 credit cards; 140 personal checks in the names of 32 individual account holders; 360 blank checks in the names of 15 individual account holders; and 289 pieces of other mail such as bills, tax documents, bank and credit card statements, and other miscellaneous items.

During an interview, Okos told officers she had accompanied Gonzalez Becerra on previous occasions when he traded methamphetamine for stolen mail.  Okos also told officers she had driven Gonzalez Becerra around the Greater Los Angeles area to steal mail.

## B.  Procedural Background

The grand jury issued a multi-count indictment charging Gonzalez Becerra with, *inter alia*, numerous counts of possessing stolen mail.  Gonzalez Becerra entered into a plea agreement with the government.  He agreed to plead guilty to a single violation of 18 U.S.C. § 1708 and, in exchange, the

---

[1] The record reveals that Gonzalez Becerra's full name is Carlos Jonathan Gonzalez Becerra.

government agreed to move to dismiss the remaining counts of the indictment and recommend a three-level reduction to Gonzalez Becerra's offense level for acceptance of responsibility. The district court accepted Gonzalez Becerra's guilty plea and ordered the preparation of a presentence investigation report ("PSR").

As relevant to this appeal, the PSR recommended a four-level increase to Gonzalez Becerra's offense level pursuant to the terms of § 2B1.1(b)(2). Section 2B1.1(b)(2) provides for graduated increases to a defendant's offense level based on the number of victims involved in the offense of conviction: (1) an increase of two levels if the crime "involved 10 or more victims" or "was committed through mass-marketing"; (2) an increase of four levels if the crime "involved 50 or more victims"; or (3) an increase of six levels if the crime "involved 250 or more victims." U.S.S.G. § 2B1.1(b)(2). Although the text of § 2B1.1 does not contain a definition of the term "victim," the PSR noted that the commentary to the guideline contains three definitions. Application Note 1 defines the term, in relevant part, as follows: "'Victim' means (A) any person who sustained any part of the actual loss determined under subsection (b)(1)[2]; or (B) any individual who sustained bodily injury as a result of the offense." *Id.*

---

[2] U.S.S.G. § 2B1.1(b)(1) sets out a schedule in which greater amounts of actual or intended monetary losses are coupled with correspondingly greater increases to a defendant's offense level. In this case, the district court concluded there was no actual loss, but that Gonzalez Becerra intended to cause a loss of more than $120,000. The amount of intended loss found by the district court corresponds to a ten-level increase in Gonzalez Becerra's total offense level. *Id.* § 2B1.1(b)(1)(F). Because the district court concluded there was no actual loss, but instead only intended loss, Gonzalez Becerra's crime did not involve any victims under the definition of the term set out in § 2B1.1 cmt. n.1.

§ 2B1.1 cmt. n.1.  Application Note 4(C) includes a special definition of "victim" as it applies to offenses involving undelivered United States mail:

(C)  *Undelivered United States Mail.*—

(i)  *In General.*—In a case in which undelivered United States mail was taken, or the taking of such item was an object of the offense, or in a case in which the stolen property received, transported, transferred, transmitted, or possessed was undelivered United States mail, "victim" means (I) any victim as defined in Application Note 1; or (II) any person who was the intended recipient, or addressee, of the undelivered United States mail.

. . . .

(iii)  *Definition.*—"Undelivered United States mail" means mail that has not actually been received by the addressee or the addressee's agent (*e.g.*, mail taken from the addressee's mail box).

U.S.S.G. § 2B1.1 cmt. n.4(C).  Pursuant to the definition set out in Application Note 4(C), the PSR concluded Gonzalez Becerra's offense level should be increased by four levels because his offense involved the undelivered mail of slightly less than 250 individuals.  *Id.* § 2B1.1(b)(2)(B).

In his sentencing memorandum, Gonzalez Becerra mounted a narrow, fact-based challenge to the applicability of § 2B1.1(b)(2)(B). Gonzalez Becerra recognized the commentary to § 2B1.1(b)(2)(B) set out two relevant definitions of the term "victim" and asserted neither definition applied. He asserted the definition set out in Application Note 1 did not apply because both parties agreed his criminal conduct did not give rise to any actual loss. He asserted the definition set out in Application Note 4(C) did not apply because

> it has never been established that the mail items in question were in fact items that were undelivered. It is quite plausible that much if not all of the mail in question could have been removed from the trash—after the mail had been delivered to its intended recipient— which would also render this enhancement inapplicable. Given the failure of proof on this issue, this enhancement should not be applied.

The entirely fact-based nature of Gonzalez Becerra's challenge to the applicability of the definition of "victim" set out in Application Note 4(C) is confirmed by the transcript of the sentencing hearing. The district court began the hearing by setting out the limited parameters of Gonzalez Becerra's challenge: "The defense also challenges the conclusion of the probation officer and the government that there were more than 50 victims of the offense. He admits that *victim* in this context includes any person who was the intended recipient or addressee of the undelivered mail." The district court then rejected Gonzalez Becerra's fact-based challenge to the applicability of Application Note 4(C), finding as follows:

He admitted in the plea agreement that he possessed mail that he knew had been stolen from the U.S. mail or a mail receptacle. He also admitted the mail included blank checks, bills, credit cards, and multiple personal checks made out to persons or entities.

The authorities found undelivered mail belonging to nearly 250 people. The items included 43 credit cards. One could argue that people sometimes receive credit cards they don't actually want and are uninformed enough about identity theft to just throw them away. However, a number of victims made statements establishing that the items at issue had been stolen, not that they had thrown them away.

In any event, there were also 140 personal checks in the names of 32 individual account holders and blank checks in the names of 15 individual account holders. People do not throw such things away.

The district court offered the parties a chance to make any "legal objections" before formal imposition of sentence. Gonzalez Becerra's counsel indicated he had none.

## III. ANALYSIS

On appeal, Gonzalez Becerra abandons the fact-based argument against the applicability of § 2B1.1(b)(2) he raised in the district court. He instead contends the district court committed legal error when it applied the definition of

"victim" set out in Application Note 4(C) to conclude his offense involved at least fifty victims. In particular, he asserts the district court erred in applying the definition from the commentary because the commentary is inconsistent with the text of § 2B1.1(b)(2).

Because the record makes clear the legal issue Gonzalez Becerra advances was not raised below, he can only obtain relief on appeal by demonstrating the district court committed plain error. *United States v. Tafoya-Montelongo*, 659 F.3d 738, 741–42 (9th Cir. 2011). "Relief for plain error is available if there has been (1) error; (2) that was plain; (3) that affected substantial rights; and (4) that seriously affected the fairness, integrity, or public reputation of the judicial proceedings." *Id.* at 741 (quotation omitted). "An error is plain if it is clear or obvious under current law. An error cannot be plain where there is no controlling authority on point and where the most closely analogous precedent leads to conflicting results." *United States v. De La Fuente*, 353 F.3d 766, 769 (9th Cir. 2003) (citation omitted). Under this standard, Gonzalez Becerra cannot demonstrate an error, let alone an error that is plain. Accordingly, it is unnecessary to consider whether he has carried his burden of demonstrating the alleged error affected his substantial rights or seriously affected the fairness or integrity of his sentencing proceeding. *United States v. Vonn*, 535 U.S. 55, 62–63 (2002) (placing upon the defendant-appellant the burden of demonstrating the existence of the third and fourth prongs of plain error review); *United States v. Gowadia*, 760 F.3d 989, 996 (9th Cir. 2014) (holding it is unnecessary to reach the third and fourth prongs of plain error review when "[t]here was no error . . . , let alone plain error").

Gonzalez Becerra asserts § 2B1.1 is a fraud guideline and, within that context, the term "victim" is commonly understood to mean someone who has suffered a monetary loss. Section 2B1.1 is not simply a fraud guideline. In 2001, the Sentencing Commission undertook a major rewrite of the guideline provisions relating to property crimes in response to concerns that the numerous guideline provisions then applicable to such crimes created undue complexity and unwarranted sentencing disparity. *See* U.S.S.G. app. C, amend. 617. To alleviate these concerns, the Sentencing Commission created a guideline provision consolidating the "theft, property destruction, and fraud guidelines." *Id.* To reflect the large number of offenses covered by § 2B1.1,[3] the general definition of "victim" in Application Note 1 includes the two most common types of victims of federal and assimilative property crimes—individuals who suffered physical[4] or pecuniary harm. Given the wide applicability of § 2B1.1, the commentary quite reasonably includes a rule applicable to a certain subset of property crimes (theft of undelivered United States mail) and an additional type of victim (intended recipients of that undelivered mail).

---

[3] *See* U.S.S.G. § 2B1.1 cmt. (listing large number of federal statutory provisions to which the guideline is applicable); U.S.S.G. app. C, amend. 617 (noting that the guidelines also apply to "offenses that arise under the Assimilative Crimes Act"); *see also United States v. Reed*, 734 F.3d 881, 885 (9th Cir. 2013) (describing how the Assimilative Crimes Act borrows "state law to fill gaps in the federal criminal law that applies on federal enclaves" and, in doing so, "establishes uniformity in a state's prohibitory laws where such conduct is not made penal by federal statutes" (quotations and citations omitted)).

[4] This definition in Application Note 1, standing alone, demonstrates the falsity of Gonzalez Becerra's assertion that § 2B1.1 was only intended to cover fraud victims who suffered pecuniary harm. Not surprisingly, this provision is not addressed in Gonzalez Becerra's brief.

U.S.S.G. app. C, amend. 617.  In light of the breadth of § 2B1.1, it is impossible to give credence to Gonzalez Becerra's assertion this court should embrace one, and only one, narrow aspect of the definitions of "victim" set out in the commentary to the guideline.

Having rejected Gonzalez Becerra's assertion that courts must define the term "victim" solely against a contextual background of crimes involving fraud, it is easy to reject his assertion that the term "victim" is tied exclusively to pecuniary loss.  Dictionaries, both legal and nonlegal, recognize the term encompasses individuals who have suffered harm to not only their financial interests, but also to dignitary or proprietary interests and physical well-being. *Black's Law Dictionary* 1703 (9th ed. 2009) (defining "victim" as a "person harmed by a crime, tort, or other wrong"); *Webster's Third New Int'l Dictionary* 2550 (1993) (defining "victim" as, *inter alia*, "someone tricked, duped, or subjected to hardship").[5]    An individual deprived of undelivered United States mail most certainly suffers harm, whether or not the harm is directly tied to a pecuniary loss. The Sentencing Commission's recognition of this fact in Application Note 4(C) is not remotely inconsistent with the ordinary understanding of the term "victim."  *See* U.S.S.G. app. C, amend. 617 ("A special rule is provided for application of the victim enhancement for offenses involving United States mail because of (i) the unique proof problems

---

[5] Consistent with these dictionary definitions, status as a victim is commonly understood to embrace an individual deprived of property with nominal economic value, but significant sentimental value.  Thus, it appears the term "victim" includes significantly more individuals than recognized in the application notes to § 2B1.1.  Gonzalez Becerra's assertion that the commentary to § 2B1.1 *expanded* the definition beyond its ordinary meaning is unpersuasive.

often attendant to such offenses, (ii) the frequently significant, but difficult to quantify, non-monetary losses in such offenses, and (iii) the importance of maintaining the integrity of the United States mail.").

Finally, Gonzalez Becerra's arguments on appeal find no support in case law. Application Note 4(C) has been applied, without any question, by numerous Circuit Courts of Appeals. *See, e.g.*, *United States v. Moore*, 733 F.3d 161, 163 & n.5 (5th Cir. 2013) (citing Application Note 4(C) for proposition that "[w]hen mail is unlawfully taken, each intended recipient of that mail is deemed to be a victim"); *United States v. Otuya*, 720 F.3d 183, 191-92 (4th Cir. 2013) (rejecting argument that individuals were not victims because they suffered no pecuniary harm by noting the individuals qualified as victims because their mail was stolen); *United States v. Leach*, 417 F.3d 1099, 1106 (10th Cir. 2005) (citing Application Note 4(C) for proposition that in a case in which undelivered United States mail was taken, the term "victim" includes "any person who was the intended recipient, or addressee, of the undelivered United States mail" (quotation omitted)).[6] No Circuit Court of Appeals has ever questioned

---

[6] Gonzalez Becerra claims the Tenth Circuit's decision in *Leach* "implicitly acknowledge[s] [the] principle" that "[t]here must be actual loss before there are actual victims." Appellant's Brief at 10 n.4. *Leach* actually holds that in the case of stolen mail, the term "victim" includes "any person who was the intended recipient, or addressee, of the undelivered United States mail." 417 F.3d at 1106 (quotation omitted). The Tenth Circuit held there were "eight discernable victims," *id.* at 1107 n.11, because "[a]t the time of her arrest, Defendant was in possession of mail addressed to eight separate people or entities." *Id.* at 1106. The reason the court in *Leach* declined to count some individuals as "victims" for purposes of Application Note 4(C) was because they were the senders of the mail, not the intended recipients or addressees, as required by the

whether Application Note 4(C) is consistent with § 2B1.1(b)(2).**[7]** This is true even though the relevant commentary was added to the guidelines in 2001. U.S.S.G. app. C, amend. 617.

## IV. CONCLUSION

The special definition of the term "victim" set out in Application Note 4(C) regarding the theft of undelivered mail is perfectly consistent with the use of that term in the text of § 2B1.1. Thus, the district court did not err, let alone plainly err, in increasing Gonzalez Becerra's offense level by four levels because he possessed the stolen mail of at least fifty individuals. U.S.S.G. § 2B1.1(b)(2)(B). Accordingly, the sentence imposed by the district court is hereby **AFFIRMED**.

---

application note. *Id.* Far from supporting Gonzalez Becerra's position, *Leach* directly contradicts it.

**[7]** The cases cited in Gonzalez Becerra's brief are not to the contrary. Neither *United States v. Armstead*, 552 F.3d 769, 780 (9th Cir. 2008), nor *United States v. Pham*, 545 F.3d 712, 716 (9th Cir. 2008), involve stolen mail. Instead, both simply involve the situation of identity theft that did not lead to monetary loss. In those circumstances, Application Note 1 makes clear the individuals who had their identities stolen are not "victims" for purposes of § 2B1.1(b)(2).